**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| BERKELEY*IEOR d/b/a B*IEOR,<br><br>Plaintiff,<br>v.<br><br>TERADATA OPERATIONS, INC., W.W. GRAINGER, INC., DHL EXPRESS (USA), INC., DANZAS CORPORATION, d/b/a DHL GLOBAL FORWARDING, AND AIR EXPRESS INTERNATIONAL USA, INC., d/b/a DHL GLOBAL FORWARDING,<br><br>Defendants. | CASE NO. 1:17-cv-07472<br><br>JUDGE AMY J. ST. EVE |

**MEMORANDUM OF LAW IN SUPPORT OF GRAINGER'S MOTION TO SEVER AND STAY COUNT I OF PLAINTIFF'S SECOND AMENDED COMPLAINT**

**TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................ 1

BACKGROUND ........................................................................................................ 2

ARGUMENT ........................................................................................................ 3

I. SEVERANCE IS WARRANTED BECAUSE TERADATA, NOT GRAINGER, IS THE REAL PARTY IN INTEREST. ........................................................ 3

II. COUNT I SHOULD BE STAYED IN ADDITION TO BEING SEVERED........................................................................................................ 6

CONCLUSION........................................................................................................ 9

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Card Activation Techs. v. Pier 1 Imports, Inc.*,
No. 09 C 2021, 2009 WL 2956926 (N.D. Ill. 2009)........1, 7, 9

*Commissariat A L'Energie Atomique v. Dell Computer Corp.*,
No. C.A. No. 03-484, 2004 WL 1554382 (D.Del. 2004) ........9

*Corry v. CFM Majestic Inc.*,
16 F. Supp. 2d 660 (E.D. Va. 1998) ........4

*Coulter Elecs., Inc. v. Smithkline Corp.*,
No. 81 C 6941, 1982 WL 52110 (N.D. Ill. 1982)........4

*In re Dell Inc.*,
2015 WL 303939 ........8

*Ferri v. United Aircraft Corp.*,
357 F. Supp. 814 (D.Conn. 1973)........5

*Joao Bock Transaction Systems, LLC v. First National Bank*,
No. 11 C 6472, 2013 WL 4840240 (N.D. Ill. 2013)........7

*LG Electronics Inc. v. Advance Creative Computer Corp.*,
131 F. Supp. 2d 804 (E.D. Va. 2001) ........4

*MGT Gaming, Inc. v. WMS Gaming, Inc.*,
978 F. Supp. 2d 647 (S.D. Miss. 2013)........4, 5, 8

*In re Nintendo of Am., Inc.*,
756 F.3d 1363 (Fed. Cir. 2014)........7

*Oplus Tech., Ltd. v. Sears Holding Corp.*,
No. 11–cv–8539, 2012 WL 2280696 (N.D. Ill. 2012)........4, 6, 7, 8, 9

*Richmond v. Lumisol Elec. Ltd.*,
2014 WL 1716447 (D.N.J. 2014) ........4, 5, 8

*Rothschild Mobile Imaging Innovations, LLC v. Mitek Sys., Inc.*,
No. CV 14-1142-GMS, 2015 WL 4624164 (D.Del. 2015) ........4, 5, 6

*Select Retrieval, LLC v. ABT Elecs.*,
No. 11 C 03752, 2013 WL 6576861 (N.D. Ill. 2013)........1, 5

*Sillage LLC v. Kenrose Perfumes Inc.*,
No. 8:14–cv–02043–CAS, 2015 WL 3649605 (C.D. Cal. 2015) ........................................7, 8

*Spread Spectrum Screening LLC v. Eastman Kodak Co.*,
No. 10 C 1101, 2010 WL 3516106 (N.D. Ill. 2010)...........................................................6, 8

*Whelen Techs., Inc. v. Mill Specialties, Inc.*,
741 F. Supp. 715 (N.D. Ill. 1990) ........................................................................................8

**Other Authorities**

28. U.S.C. § 1404(a) ...............................................................................................................4

Fed. R. Civ. P. 21...................................................................................................................3

## INTRODUCTION

Defendant W.W. Grainger, Inc. ("Grainger") is not the real party in interest in this patent litigation matter. The sole accused product is Defendant Teradata Operations, Inc.'s ("Teradata") software solution known as Teradata Value Analyzer ("TVA"). Grainger did not manufacture or code TVA, nor does it sell or provide TVA to its consumers. Rather, Grainger is merely a customer that purchased TVA from Teradata. While Plaintiff asserts indirect infringement by Teradata based on Teradata's sales of TVA to Grainger and others, apparently for tactical reasons, Plaintiff also asserts a redundant claim of direct infringement against Grainger (Count I). But there is no purpose served in dragging Grainger into this dispute. Indeed, Plaintiff can fully litigate this matter as to liability and damages ***without*** Grainger. Accordingly, Grainger moves to sever and stay Count I of this action.

That Teradata is the real party in interest cannot reasonably be disputed; Teradata developed and provides TVA, and it has accepted its responsibility against Count I through indemnification of Grainger. As a result, whether Grainger infringes and the scope of damages will necessarily be resolved in due course as part of Plaintiff's claim against Teradata. Grainger is not needed and litigating Count I is unnecessary and wasteful. This Court has repeatedly held that it is within the law and in the interest of justice to sever and stay actions against customers where, as here, the real party in interest is present and accountable. *See Card Activation Techs. v. Pier 1 Imports, Inc.*, No. 09 C 2021, 2009 WL 2956926, at *2 (N.D. Ill. 2009); *Select Retrieval, LLC v. ABT Elecs.*, No. 11 C 03752, 2013 WL 6576861, at *2-*4 (N.D. Ill. 2013). Consistent with this precedent, it is in the interest of the parties and this Court to sever and stay Count I until the dispute between Plaintiff and Teradata is resolved.

## BACKGROUND[1]

Grainger was founded in 1927 and is headquartered in Chicago, Illinois. Grainger is a leading supplier of industrial products including motors, lighting, fasteners, plumbing, tools and safety supplies. Grainger serves over three million customers through a network of branches, online channels and distribution centers. Grainger, however, is not a software company.

Teradata is headquartered in Ohio and provides database-management systems for data analytics. Teradata offers a broad portfolio of data-analytics products and services to customers in a wide variety of industries, including Financial Services, Retail, Travel and Transportation and Communications, Media and Entertainment. TVA is one of Teradata's many software products.

Grainger is one of Teradata's customers. Grainger purchased TVA software from Teradata in approximately 2010.[2] Grainger has little, if any, information regarding the operation of the software, the calculations performed, the underlying software code or the software operational steps. Moreover, any information Grainger may have would be duplicative of that available from Teradata.

On October 16, 2017, Plaintiff filed suit against Teradata and Grainger claiming indirect and direct infringement, respectively, of U.S. Patent Nos. 7,596,521 ("the '521 patent"), 7,882,137 ("the '137 Patent"), and 8,612,316 ("the '316 Patent") (collectively the "Asserted Patents"). On February 12, 2018, Plaintiff filed its First Amended Complaint, which added two additional parties. On March 7, 2018, Grainger and Teradata each filed motions to dismiss.

---

[1] For purposes of this motion, Grainger takes the allegations as pled in the Second Amended Complaint ("SAC") to be true; however, Grainger reserves the right to dispute any and all such allegations in the course of the litigation. Grainger provides below some limited background for context only, but rests its motion on the four corners of the SAC.

[2] TVA is just one of multiple solutions provided by Teradata to Grainger. Grainger also employs Teradata's Active Enterprise Data Warehouse platform for warehouse management.

Plaintiff did not respond to those motions, but instead amended its complaint yet again on March 26, 2018. Count I of the SAC asserts direct infringement by Grainger. The count, however, emphasizes that at issue is really Teradata's product. For instance, Plaintiff avers that "Teradata Value Analyzer is ***Teradata's*** tool for calculating the profit. . ." (Dkt. No. 41, at ¶ 73) (emphasis added). Plaintiff further relies on Teradata presentations for its allegations. (*Id.* at ¶¶ 73, 75, 77, 79, 88, 90, 92, 94, 96).

Based on the very same use by Grainger identified in Count I, Plaintiff alleges indirect infringement by Teradata. Specifically, Count V of the SAC alleges indirect infringement by Teradata based on "users of the TVA includ[ing] at least Grainger and DHL. . ." (*Id.* at ¶ 233). Because the claim as to Grainger is merely peripheral and because the claim as to Teradata will resolve virtually all issues in dispute, Grainger brings this motion.

## ARGUMENT

### I. SEVERANCE IS WARRANTED BECAUSE TERADATA, NOT GRAINGER, IS THE REAL PARTY IN INTEREST.

Patent infringement is determined by comparing the accused product with the patent claims as interpreted by the Court. Here, Plaintiff has accused Teradata of infringing based on its sale of TVA to Grainger. As such, in the course of determining whether Teradata infringes, the parties will analyze TVA as provided to Grainger. The corresponding claim as to Grainger, therefore, is wholly duplicative and redundant of the proof required for Plaintiff's claim as to Teradata. Moreover, because Teradata is the developer and distributor of TVA, and further is indemnifying Grainger based on its use of TVA, Teradata is the real party in interest. Accordingly, Count I as to Grainger is peripheral to the claim against Teradata, and can and should be severed.

A "district court has broad discretion whether to sever a claim under Rule 21." *Oplus Tech., Ltd. v. Sears Holding Corp.*, No. 11–cv–8539, 2012 WL 2280696, at *2 (N.D. Ill. 2012) (citing *Rice v. Sunrise Express, Inc.*, 209 F.3d 1008, 1016 (7th Cir. 2000)). Any claim against a party may be severed and proceeded with separately. *Id*. In analyzing whether a claim should be severed, courts consider whether "(1) the claim to be severed is peripheral to the remaining claims; (2) the adjudication of the remaining claims is potentially dispositive of the severed claim; and (3) the transfer of the remaining claims otherwise is warranted under § 1404(a)."[3] *MGT Gaming, Inc. v. WMS Gaming, Inc.*, 978 F. Supp. 2d 647, 664 (S.D. Miss. 2013) (citations omitted); *Rothschild Mobile Imaging Innovations, LLC v. Mitek Sys., Inc.*, No. CV 14-1142-GMS, 2015 WL 4624164, at *2 (D.Del. 2015). These factors weigh in favor of severance.

A claim of patent infringement against a customer where the manufacturer is a co-defendant is a classic example of a peripheral claim. *See., e.g., Coulter Elecs., Inc. v. Smithkline Corp.*, No. 81 C 6941, 1982 WL 52110, at *4 (N.D. Ill. 1982) (severing and staying claim against customer because customer who merely used the accused device was "only peripherally involved in the subject matter of the suit and the main parties in interest [were] the plaintiff and the defendant manufacture"); *Richmond v. Lumisol Elec. Ltd.,* 2014 WL 1716447, at *4 (D.N.J. 2014) ("[a] patent infringement claim against a retailer, distributor, or customer of infringing products is peripheral to a claim against a manufacturer. . ."); *LG Electronics Inc. v. Advance Creative Computer Corp.*, 131 F. Supp. 2d 804, 811 (E.D. Va. 2001) ("A patent infringement claim against a distributor of infringing products is peripheral to a claim against a manufacturer."); *Corry v. CFM Majestic Inc.*, 16 F. Supp. 2d 660, 666 (E.D. Va. 1998) (explaining that an infringement claim against a distributor was peripheral because the distributor was secondarily involved, did not manufacture the accused device, and would only be liable if

[3] Grainger does not address the third prong because it does not seek transfer of the claim against it.

the manufacturer was liable). Grainger fits squarely into this precedent. It is merely a consumer of TVA; Teradata is the manufacturer, seller and distributor of TVA. Teradata, not Grainger, manufactured the software and is in a far better position than Grainger to provide technical and sales documentation relating to TVA.

Underscoring the peripheral nature of Count I is the fact that Teradata is indemnifying Grainger against Plaintiff's infringement claims. Courts have recognized that the indemnifying defendant is "the real party in interest" and have found claims against the indemnified defendant to be peripheral. *See.*, *e.g.*, *Richmond*, 2014 WL 1716447 at *6; *MGT Gaming, Inc.*, 978 F. Supp. 2d at 665 n.13 (citing *Ferri v. United Aircraft Corp.*, 357 F. Supp. 814, 818 (D.Conn. 1973) (severance of claims against customer was appropriate where manufacturer had agreed to defend and indemnify the customer defendants)); *see also Select Retrieval, LLC*, 2013 WL 6576861, at *2 (discussing that interests of indemnitee-customers in outcome of litigation were particularly different from the interests of the indemnitor-supplier, as supplier was "concerned with its technology across its customer base, and obviously ha[d] much more to lose (or gain) from a ruling," whereas customers were "limited to defeating claim as to their own use" and lacked "the same incentive to establish that [the supplier's] technology itself does not infringe a valid patent . . .[and] the same understanding of the underlying technology").

In addition, adjudication of the claim against Teradata will inherently resolve Count I against Grainger. If Plaintiff is successful on Count V, which is predicated on use by Grainger, there can be no further legal claim as set forth in Count I. Further, if Plaintiff is unable to show infringement based on TVA as asserted in Count V, then there can be no infringement under Count I. The *Rothschild Mobile Imaging Innovations* case dealt with a similar fact pattern. *See* 2015 WL 4624164, at *3. Rothschild ("RMII") sued Mitek, a company that provided patented

mobile photo technology to banks, and several of its customer banks for direct, indirect, and willful infringement. *Id.* The court there found that "[a]djudication of [RMII's] patent infringement claim against Mitek will dispose of any claims against the Bank defendants [as users of the asserted technology]." *Id.* The court reasoned that "[i]f the court finds Mitek liable and RMII collects royalties from it, then RMII cannot in turn collect royalties from the entities to whom Mitek sold the products." *Id.* The court further pointed out that "[o]n the other hand, if the court holds that Mitek did not infringe the patents-in-suit, RMII's case against the Bank defendants for using such products will be greatly diminished." *Id.* Grainger is in the same position here. There is no benefit to any party, or this Court, in forcing Grainger to proceed with defending Count I at this stage.

## II. COUNT I SHOULD BE STAYED IN ADDITION TO BEING SEVERED.

Because the claim as to Grainger is redundant of the claim as to Teradata and Teradata is the real party in interest, Count I as to Grainger should be severed and stayed. This is particularly true in a case, like this one, where the product at issue is complex software. *See Spread Spectrum Screening LLC v. Eastman Kodak Co.*, No. 10 C 1101, 2010 WL 3516106, at * 3 (N.D. Ill. 2010) (customers of the manufacturer would likely "not even understand how the product software actually works and will not be helpful to determine whether" the manufacturer's product infringes).

"[A] court also has broad discretion in deciding whether to stay proceedings. '[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.'" *Oplus*, 2012 WL 2280696, at *2. In determining whether a stay is warranted, Courts consider: "(1) whether a stay will unduly prejudice or tactically disadvantage the non-moving party, (2) whether a stay will simplify the issues in question and streamline the trial, and

(3) whether a stay will reduce the burden of litigation on the parties and on the court." *Oplus*, 2012 WL 2280696, at *2 (citing *Tap Pharmaceutical Products, Inc. v. Atrix Laboratories, Inc.*, 2004 WL 422697, at *1 (N.D. Ill. 2004)). These factors favor a stay of the claim (Count I) relating to Grainger.[4]

*First*, staying the claim against Grainger would not prejudice Plaintiff. In a manufacturer-customer suit such as this one, the customer's liability is contingent on the manufacturer's liability. *In re Nintendo of Am., Inc.*, 756 F.3d 1363, 1366 (Fed. Cir. 2014) (manufacturer's liability is predicate to recovery from any of the customer defendants, requiring the case against the manufacturer to proceed first). There will be no need for the Court to revisit the claims against Grainger after the claims against Teradata are resolved. Thus, there is no risk of duplicative proceedings. To the contrary, severance and stay, in fact, reduce the burden on the parties and the Court.

*Second*, a stay will significantly simplify the issues and streamline any possible trial. In this case, Grainger falls into the "customer-suit" exception. The exception "gives a manufacturer's patent infringement action against its customers preferential treatment over a patent owner's earlier filed suit against the customers." *Joao Bock Transaction Systems, LLC v. First National Bank*, No. 11 C 6472, 2013 WL 4840240, at *2 (N.D. Ill. 2013). This exception seeks to avoid "imposing the burdens of trial on the customer, [] [as] the manufacturer [] is generally the 'true defendant' in the dispute." *In re Nintendo of Am., Inc.*, 756 F.3d at 1365 (citation omitted); *Card Activation Techs.*, 2009 WL 2956926, at *2 ("the manufacturer is the true defendant in the customer suit. . .").

This exception is applied routinely in cases where, as here, a manufacturer and a customer are co-defendants. *See, e.g., id.*; *Sillage LLC v. Kenrose Perfumes Inc.*, No. 8:14–cv–

[4] These factors also favor a stay of Counts II-IV of the SAC.

02043–CAS, 2015 WL 3649605, at *6 (C.D. Cal. 2015) (quoting *In re Dell Inc.*, 600 F. App'x 728, 730 (Fed. Cir. 2015) ("[t]he policies expressed in the duplicative-case context are certainly relevant in a district court's decision how to proceed within the context of a single case").

*Third*, a stay would reduce the burden of litigation on the parties and on the Court as a stay would "benefit[] judicial economy and serve[] 'the just, speedy and inexpensive disposition of this litigation.'" *Oplus*, 2012 WL 2280696, at *4 (citation omitted). In view of Teradata's obligation to defend and indemnify Grainger in this lawsuit, focusing this litigation on the real party in interest and core claim preserves the parties' and the Court's resources. *Id.* All substantive issues regarding Grainger's liability would first be resolved in the action against Teradata. *See Whelen Techs., Inc. v. Mill Specialties, Inc.*, 741 F. Supp. 715, 715 (N.D. Ill. 1990) (a stay is proper where "the second action would resolve all charges against the customers in the stayed suit, including liability for damages."). Resolution of claims against Teradata substantially simplifies, if not eliminates entirely, the claim against Grainger. A stay of Count I is thus the most efficient way to resolve this case. *See Sillage LLC*, 2015 WL 3649605, at *6 ("the Court concludes that staying the severed actions against the retail defendants would be the most efficient and fair course of action.").

"The rationale behind severing and staying in these circumstances is that 'second-hand entities like retailers or distributors [are] not involved and [would] not have substantive knowledge about the patent infringement, which would begin at the design and manufacture stages.'" *Richmond*, 2014 WL 1716447, at *4 (citing *MGT Gaming, Inc.*, 2013 WL 5755247, at *12); *Spread Spectrum Screening, LLC*, 2010 WL 3516106, at *3 (granting severance and stay of claims against customers since they are merely users of the software product at issue, likely do not understand how it works, and thus have nothing substantive to offer to determine

infringement). Courts consistently grant such relief where the real party in interest, like Teradata here, is involved and the claims against the real party in interest overlap. *See, e.g., id.; Oplus*, 2012 WL 2280696, at *4 (stating that the manufacturer, and not its customer, was "the real party in interest who must defend this infringement suit"); *Card Activation Techs.*, 2009 WL 2956926, at *2 ("in reality, the manufacturer is the true defendant in the customer suit. . .it is a simple fact of life that a manufacturer must protect its customers, either as a matter of contract, or good business, or in order to avoid the damaging impact of an adverse ruling against its products"); *Commissariat A L'Energie Atomique v. Dell Computer Corp.*, No. C.A. No. 03-484, 2004 WL 1554382, at *3 (D.Del. 2004) (manufacturers are considered the "true defendants" since they are "intimately involved in the design, operation, and use of the accused" products, and thus, are "in the best position to contest the validity and infringement of [the] asserted patents."). Equity, efficiency and the law all weigh in favor of severing and staying Count I as to Grainger.

**CONCLUSION**

For the foregoing reasons, Defendant W.W. Grainger, Inc.'s request to Sever and Stay Count I of Plaintiff's Second Amended Complaint should be granted.

Dated: April 19, 2018

Respectfully Submitted,

BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP

*/s/ Kal K. Shah*
Kalpesh (Kal) K. Shah
Zaiba Baig
333 West Wacker Drive, Suite 1900
Chicago, IL 60606
Telephone: 312.212.4949
Facsimile: 312.757.9192
Email: kshah@beneschlaw.com

*Attorneys for Defendant*
*W.W. Grainger, Inc.*

**CERTIFICATE OF SERVICE**

I certify that, on **April 19, 2018**, I filed the foregoing **GRAINGER'S MOTION TO SEVER AND STAY COUNT I OF PLAINTIFF'S SECOND AMENDED COMPLAINT** with the Clerk of the Court using CM/ECF, which will automatically send e-mail notification of this filing to all attorneys of record in this action.

*/s/ Kal K. Shah*
Kalpesh (Kal) K. Shah

*One of the Attorneys for Defendant*
*W.W. Grainger, Inc.*