IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| BERKELEY*IEOR d/b/a B*IEOR, a Nevada Corporation, | ) ) ) | |
| Plaintiff, | ) ) | No. 17 C 7472 |
| v. | ) ) | Magistrate Judge Jeffrey Cole |
| TERADATA OPERATIONS, INC., | ) ) ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

On February 14, 2023, the plaintiff, Berkeley, filed a motion to vacate Judge Kocoras's Order to sever and stay the customer defendants [Dkt. #327] and to stay expert discovery [Dkt. #328]. With all discovery set to finally close on February 23rd, Berkeley noticed both motions for a hearing before Judge Kocoras on February 21st [Dkt. ##329, 331], but Judge Kocoras struck that hearing and referred both the discovery motion and the motion to vacate his Order to me. [Dkt. #334]. As it happens, I have the authority to say and do lot about the former but not, obviously, about the latter. For the following reasons, Berkeley's motion to stay discovery [Dkt. #328] is denied, and it is recommended that Judge Kocoras deny Berkeley's motion to vacate his March 7, 2019 Order.

**I.**

Imagine if you will, a world filled with dread. Schools closed. Parks empty. Businesses shuttered. Restaurants and nightclubs silenced. Downtowns deserted. This is how it was in April 2020. It seems so very long ago. At that same time, counsel for both Berkeley and Teradata had agreed on a discovery schedule in a matter of a couple of weeks. [Dkt. ## 119, 121]. While the Local Patent Rules make schedules in patent cases more indefinite than in other cases, fact discovery

was to begin on June 18, 2020 and end on February 5, 2021; expert discovery would end around the first week of July 2021. [Dkt. ##121, 125]. The case had already dragged on for two and a half years, so, finally putting together a discovery schedule and actually getting started on discovery was a significant accomplishment. And the schedule that the lawyers for both sides jointly fashioned made sense. Certainly, a year was a reasonable amount of time to spend on discovery involving software relating to profit statements. After all, discovery was to be "proportional to the needs of the case, considering the importance of the issues at stake in the action . . . ." Fed.R.Civ.P. 26(b)(1). While the case undoubtedly was of importance to the litigants and their counsel, this wasn't the most socially important case in the courthouse. But that was almost two years ago, and while many things have improved, discovery in this now five-and-a-half-year-old case unfortunately has not.

The parties filed an amended schedule in July 2020, but it didn't extend that February 5, 2021 fact discovery deadline. [Dkt. ##132]. But, like the course of true love, things did not run smoothly, and counsel later that month disagreed over the designation of documents as "confidential" or "highly confidential." Their "controversy" required two judicial officers to enter multiple Opinions and Orders over the course of two months before the matter was resolved. [Dkt. ##141, 148, 153, 154]. Nevertheless, the February 5, 2021 deadline appeared to remain in place. Except that it didn't.

While the amended schedule entered in July 2020 remained in place, at a status hearing on January 21, 2021, Judge Kocoras, while acknowledging the age of the case, generously "let [the attorneys] work until March 5 under [their] own devices . . . ." He added, with extreme optimism, that "[p]resumably, all of the essential discovery needed for a reasonably clear trial would be done by that date." [Dkt. #158, at 6-7]. Unfortunately, but not surprisingly, it wasn't. Events were to

prove the characteristic wisdom of Judge Posner's observation that "protracted discovery, [is] the bane of modern litigation." *Rossetto v. Pabst Brewing Co., Inc.,* 217 F.3d 539, 542 (7th Cir.2000).

March 5th came and went. Fact discovery was, technically, over, but at the next status hearing on March 9, 2021, the attorneys came begging for an additional thirty days about a week late. Judge Kocoras magnanimously – if, in hindsight, perhaps ill-advisedly – doubled their request, and extended fact discovery for two more months, until May 11, 2021. [Dkt. #161]. Attorneys on both sides promised that was "more than enough." [Dkt. #167, at 6]. Unfortunately, these assurances proved to be of no more value than the "munificent bequest in a pauper's will" envisioned by Justice Jackson's concurring Opinion in *Edwards v. California*, 314 U.S. 160, 186 (1941).

As May 11th came and went, the attorneys – mostly Berkeley's attorneys – filed a raft of discovery motions [Dkt. ##172, 174, 176, 178, 179, 183], including a motion to extend the discovery deadline by ninety days. Not surprisingly, the motion was filed at *5:49 on the evening discovery had finally closed*! [Dkt. #178]. A week later, Judge Kocoras again, overly generously – perhaps ill-advisedly in hindsight – struck the deadline and referred all the motions to me and gave me the discretion to manage the deadline. [Dkt. #188]. I denied Berkeley's tardy and poorly supported motion to extend discovery for several reasons [Dkt. #192], hacked through some of the weeds sewn by the other motions [Dkt. #194], and embarked on the phase of the case – a phase that is all too common – where a magistrate judge attempts to move the case to the conclusion of discovery – with counsel often, in effect, kicking and screaming through the process. *See, e.g., Williams v. Ests. of Hyde Park, LLC*, No. 19 C 2288, 2020 WL 5702297, at *1 (N.D. Ill. Sept. 24, 2020). Still, leftover document designation and deposition issues were, seemingly, all that remained.

To give a bit of the gist of what the next rather turbulent several months were like, Berkeley's first step was to completely ignore both Judge Kocoras's Order referring discovery matters to me and giving me discretion to set the close of discovery, and my Order denying its motion to extend the discovery deadline. [Dkt. ## 198, 199]. That necessitated two judicial officers issuing two more Orders to explain the state of things. [Dkt. ##203, 229]. Next, counsel for the parties refused to comply with my Order that they file a stipulated, combined Local Rule 37.2 statement in compliance with *Autotech Techs. Ltd. P'ship v. Automationdirect.Com, Inc.*, 2007 WL 2713352, at *4 (N.D. Ill. 2007). [Dkt. #194, at 2; #204]. While some progress was made [Dkt. #208], counsel continued to struggle with nearly everything, from scheduling depositions to complying with orders and meeting deadlines to document production to sealing documents to conducting depositions. *See, e.g.,* [Dkt. ## 208, 214, 219, 220, 222, 223, 225, 230, 232, 234, 235, 237, 238, 248, 249, 251, 252, 260, 261, 262, 265, 266, 269]. It seemed, at every step of the way, if there were something to be done, counsel could not manage it without demanding necessarily limited judicial resources – with adverse consequences on the other litigants competing for the necessarily limited time of judges. *See Channell v. Citicorp Nat. Services, Inc.*, 89 F.3d 379, 386 (7th Cir. 1996).[1]

---

[1] The types of mutual accusations that the court was dealing with in this period can be exemplified by one of Berkeley's discovery motions, filed September 17, 2021. It was a scant, page-and-a-half motion, unsupported by pertinent authority, claiming that Teradata had produced 17 documents and complaining that there must be more. [Dkt. #230]. As I stated in my ruling on the motion, Berkeley failed to offer any support for its suspicions that there had to be more than 17 relevant documents, or contracts – Berkeley was non-specific in its brief motion as to what the documents were – ignoring case after case requiring the moving party to make a showing "that documents that have been produced permit a reasonable deduction that other documents may exist or did exist."[Dkt. #234, at 2-3].

Berkeley filed objections before Judge Kocoras, this time going into depth over the course of 12 pages, and supporting its position with caselaw. [Dkt. #241]. But, as Judge Kocoras pointed out in his Order overruling Berkeley's objections, that was too late:

(continued...)

A year after the original fact discovery deadline, and nine months after the May 11, 2021 deadline, counsel for Berkeley was still adverting to needing additional time to file additional discovery motions. But, of course, those would have been exceedingly late. [Dkt. #277]. *Haynes v. Alliant Food Serv., Inc.*, 93 F. App'x 71, 73–74 (7th Cir. 2004)("We review a refusal to compel additional discovery only for abuse of discretion ... And rarely will we find an abuse of discretion when the motion to compel came after the close of discovery."); *Packman v. Chicago Trib. Co.*, 267 F.3d 628, 647 (7th Cir. 2001). So, finally, fact discovery ended; albeit for the third time.

Next, of course, was expert discovery and it began – not surprisingly – inauspiciously. In June 2022, the attorneys proved incapable of agreeing to a schedule, mostly because Teradata didn't care for Judge Kocoras's claim construction ruling. [Dkt. ##282, 283, 285, 290]. That dispute continued for another couple of months, which allowed Berkeley to take another whack at the dead and decaying horse that was fact discovery.

On July 26, 2022, Berkeley filed a motion to reopen fact discovery so that it could serve what it falsely called "narrowly tailored supplemental discovery requests" on Teradata's customers. [Dkt.

---

[1](...continued)
Berkeley had every opportunity to supply Judge Cole with the detailed explanation of its position regarding Teradata's purported discovery violations as it set forth in its Memorandum in Support of its Rule 72(a) Objection before this Court. But Berkeley instead submitted a bare bones motion, choosing to ignore the wealth of case law applicable to motions to compel . . . .

\* \* \*

. . . a status hearing was held on September 28, 2021, at which time Berkeley could have easily brought the issue to Judge Cole's attention. Yet, according to the hearing transcript (Dkt. # 236), Berkeley did not do so.

[Dkt. #250].

#299].[2] But, as even Berkeley seemed to acknowledge in its motion [Dkt. #299, at 2], Judge Kocoras had entered an Order, still in place, that severed those original defendants and stayed the case against them. Berkeley took issue with that Order and it still does, for essentially the same reasons reiterated in its current motion to vacate. In the minds of Berkeley's lawyers, Teradata had "promised" Judge Kocoras it would produce certain documents regarding its customers in discovery. [Dkt. #299, at 3, 4, 6]. Berkeley argued that Judge Kocoras had been duped by Teradata's "promise." [Dkt. #299, at 2]. But, even if Berkeley had a point about Judge Kocoras's Order being the product of a misrepresentation by Teradata, and no one is saying it did, the thing to have done, obviously, was to take it up with Judge Kocoras, who had ruled there was no need to involve the customer defendants in discovery. [Dkt. #80, at 17, 18]. Why Berkeley refused to take that step until four years after his ruling is anyone's guess – although it does not require much of an imagination to explain the inaction.

The step Berkeley did take back in July 2022 was, as seems to be its wont, one taken at literally the eleventh hour of the final night that fact discovery could be reopened under Local Patent Rule 1.3. [Dkt. #304]. Obviously, that was far too late. It is a classic example of what Judge Kennelly has criticized as an attempt to get a continuance by default. The only two cases Berkeley cited in support of its obviously tardy request served only to show how late Berkeley was. *Howmedica Osteonics Corp. v. Zimmer, Inc*., 822 F.3d 1312, 1325 (Fed. Cir. 2016)(plaintiff sought discovery *immediately* after the Markman hearing and completed additional discovery two months thereafter ); *Activision Publ'g, Inc. v. Gibson Guitar Corp*., No. CV 08-1653MRPSHX, 2009 WL

---

[2] The "narrowly tailored requests" were, in fact, twelve categories of document requests spread across nine pages. [Dkt. #299-1].

586629, at *2 (C.D. Cal. Feb. 26, 2009)(claim construction entered on September 16, 2008; discovery sought and conducted prior to October 15, 2008). As has often been the case, Berkeley provided no explanation for why it waited until the last minute. It also failed to comply with Local Rule 37.2, which had long proved to be a sore spot in this case. [Dkt. #304]. As a result, fact discovery remained closed, as it had been for over a year. [Dkt. #304]. Significantly, Berkeley never objected to my August 1, 2022 Order.[3]

The attorneys turned their attentions to quibbling over the expert discovery schedule. [Dkt. ##314, 315]. Berkeley wanted a shorter one than Teradata did [Dkt. #314][4] which certainly seems odd now – but, the attorneys somehow figured it out [Dkt. #316] and the expert discovery schedule was finally entered on September 23, 2022. [Dkt. #318]. Initial expert reports would be due by December 12, 2022; rebuttal reports would be due by February 2, 2023; depositions were to be completed by February 23, 2023. [Dkt. #318]. Thereafter, it seemed that things had taken a turn for

---

[3] In fairness to Berkeley, however, Berkeley did notice its motion before Judge Kocoras, as he was in the best position to know what he would allow under his Order severing the customer defendants and staying the counts against them. [Dkt. #300]. But, after reviewing Berkeley's motion, Judge Kocoras referred it to me. [Dkt. #301]. Still, if the discovery were so very important and Judge Kocoras's March 2019 Order were the major obstacle to Berkeley making out its case, it certainly, at the very least, should have filed objections under Fed.R.Civ.P. 72 in order to, if nothing else, bring the matter back before the judge who entered the original Order. Indeed, Berkeley had no qualms about filing objections to other rulings. [Dkt. #205, #240].

[4] The expert discovery schedule kerfuffle was yet another example of how the attorneys in this case tend to operate. On June 29, 2022, I asked the parties to provide me with an *agreed* expert discovery schedule "as soon as Judge Kocoras rule[d]"on Teradata's then-pending motion. [Dkt. #290]. Judge Kocoras's ruling came at 1:30 p.m. on September 15, 2022. [Dkt. #313]. Berkeley quickly became impatient with Teradata for not negotiating an expert discovery schedule immediately thereafter. A bit more than 24 hours later, Berkeley filed its own expert discovery schedule, claiming it had been "forced" to do so because Teradata was "unwilling to cooperate expeditiously." [Dkt. #314, at 1]. Teradata wanted to review Berkeley's proposed schedule and get back to them the following week. [Dkt. #314-1]. On the one hand, the schedule was a simple matter of three deadlines that ought not to take much reviewing, and on the other hand, an ultimatum barely a day after Judge Kocoras ruled was probably not the way to go either.

the better. As of January 4, 2023, the attorneys "report[ed] that expert discovery [wa]s proceeding smoothly . . . ." [Dkt. #326].

But, that budding romance ended appropriately on Valentine's Day. With a week left in expert discovery, Berkeley filed about 140 pages of motions and exhibits [Dkt. ##327-32] before Judge Kocoras regarding fact discovery from those defendants Judge Kocoras severed from this case on March 7, 2019. [Dkt. #80]. The filings present essentially the same contentions as Berkeley raised in its motion to reopen discovery seven months ago, with Berkeley again asserting that Teradata pulled the wool over Judge Kocoras's eyes made some sort of "promise to the court" to produce unspecified materials regarding infringement by the severed defendants. [Dkt. #327].

**II.**

First, the motion to stay expert discovery: obviously, given all that has gone on before, Berkeley ought to have known better than to file a motion to stay discovery one week before the expert discovery deadline. More than once in this case, Berkeley has expressed concern over judges being duped by attorneys. [Dkt. #299, at 2, 3, 6, 7; #327, at 2, 6, 7, 11, 14]. Unfortunately, it does happen, so with Berkeley's concerns in mind, I am on my guard. What am I to think of a motion to stay expert discovery filed months into expert discovery on February 14th when that expert discovery is set to close on February 23rd? Worse, Berkeley noticed the motion for a hearing on the 21st. The timing of the motion certainly seemed purposeful since in any possible scenario, the motion could not possibly be decided before expert discovery closed. In any event, with Berkeley's concerns about judges being gulled by lawyers, I won't be taken in. The only way to perceive what Berkeley has done is that it was an attempt to paint Judge Kocoras – or me – into a corner in the hopes of forcing one of us to do Berkeley's bidding by default. *See, e.g., Monco v. Zoltek Corp.*,

2019 WL 4686547, at *2 (N.D. Ill. Sept. 26, 2019)("Extensions by default, ... and that is in reality what is sought by the defendants – ought not be allowed."); *G & G Closed Circuit Events, LLC v. Castillo*, 2016 WL 3551634, at *4 (N.D. Ill. 2016)("The 11th-hour tactics employed . . . presuppose that a Judge will simply do whatever the parties wish.").

That is certainly confirmed by Berkeley's objection to my Order of February 16th [Dkt. #337] in which I indicated that the parties should not presume Berkeley's motion for a stay of expert discovery would be granted. [Dkt. #335(". . . Berkeley did not file its motion to stay expert discovery until a week before expert discovery was set to close and did not notice the motion for a hearing before Judge Kocoras until 2 days before the close of expert discovery . . . the parties are reminded that expert discovery is still set to close on February 23, 2023. [Dkt. # 318, 326 ]. Despite the less than ideal timing of Berkeley's motion, neither side should be operating as though a stay were already in place.")]. It's clear that Berkeley's position is that the court had no right to deny its motion for a stay, and that Teradata had no right to respond to Berkeley's motion. That certainly qualifies as hubris of the highest order.

Along those same lines, one should not be taken in by Berkeley's expedient of calling what it wants a "stay of expert discovery," because it's not just a stay of expert discovery that Berkeley sought; it is a reopening of fact discovery to allow it to submit what it tendentiously "narrow and targeted discovery requests" from July 2022 to the four severed customer defendants. [Dkt. #328, Par. 3]. With no hint of irony, Berkeley assures the court, "[s]o long as the Customer Defendants honor their discovery obligations in a timely manner, any delay to expert discovery will be minimal." [Dkt. #328, Par. 3]. It is as though Berkeley's attorneys have had all memory of the last two and half excruciating years of contentious discovery erased. The court has not and will not uncritically accept

the insistence that "any delay to expert discovery will be minimal." It cannot be too often repeated that "saying so doesn't make it so...." *United States v. 5443 Suffield Terrace, Skokie, Ill.,* 607 F.3d 504, 510 (7th Cir. 2010). Based on the history of this case, it is almost guaranteed that delay will be significant.[5]

Berkeley's big selling point for staying expert discovery in its final week is its assurance that "unnecessary expenditure of resources, time, and attention dealing with depositions... may be mooted and/or streamlined by the additional information provided by the Customer Defendants." [Dkt. #328, Par. 5]. We will be pardoned for not accepting uncritically this assurance. This case is well into its sixth year. A glance at the docket will show that the parties have already expended massive amounts of time, money and – especially when one considers "the importance of the issues at stake" – a staggering amount of judicial resources, mostly on one contentious piece of discovery after another. They were unable to meet deadlines and were even unable to schedule depositions on their own. The chance that they may have to revisit a few points if Judge Kocoras ultimately vacates his March 2019 Order is a drop in the bucket compared to resources, time, and attention that have already been expended on their dispute.

One final point about Berkeley's motion to stay expert discovery. It is couched as though the parties, with just a week left in expert discovery, are not close to having completed expert depositions. The deadline for rebuttal reports was February 2, 2023 – two weeks longer than the period proposed by Berkeley, itself. [Dkt. ##314, 316]. Similarly, the deadline for completion of

---

[5] Since Judge Kocoras struck the May 11, 2021 fact discovery deadline – a deadline the Berkeley said would allow for "more than enough" discovery – Berkeley has had the court sift through over 1100 pages of discovery motions and exhibits. [Dkt. ## 174-180, 182-84, 198-99, 201, 205, 215, 219-220, 223, 230, 246, 240-43, 256-57, 251-53, 282, 299, 314, 327-332, 336, 337].

10

expert depositions – February 23, 2023 – is *ten days later* than the deadline Berkeley, itself, proposed on September 16, 2022. [Dkt. ##314, 316]. Odd, indeed, then, that Berkeley seems to complain that the deadline came far too soon for it to depose anyone. [Dkt. #337, ¶. 7]. Hopefully, it is not the case that Berkeley simply stood idly by as of February 2, 2023, with the intention of filing a motion to delay expert discovery in its final week; but that would seem to be a faint hope. It should not be forgotten that "[l]awyers and litigants who decide to play by rules of their own invention will find that the game cannot be won." *United States v. Golden Elevator, Inc.*, 27 F.3d 301, 302 (7th Cir. 1994).

In any event, Berkeley's motion to stay expert discovery [Dkt. #328], filed in the nineteenth week of a twenty-week expert discovery window [Dkt. ##314-316, 318], and in the one hundred and thirty-ninth week of a one hundred and forty week discovery schedule, is denied.

**III.**

That leaves Berkeley's motion to vacate Judge Kocoras's March 2019 Order severing the customer defendant and staying proceedings against them. Obviously, as Berkeley has pointed out [Dkt. #336, Pars. 5-8; #337, Par. 6], without consent of the parties, a magistrate judge has no authority to overturn a District Judge's order. So all that the Federal Rules of Civil Procedure allow me to do is issue a Report and Recommendation. That is the appropriate course here since I cannot be sure what was intended by Judge Kocoras's Order. First, there's an immediately apparent problem with Berkeley's motion. Berkeley couches its motion to overturn Judge Kocoras's March 2019 Order as falling under Fed.R.Civ.P. 60(b)(6). But that is just another effort to confuse things. According to Berkeley's repeated assertions in its motion, Teradata gulled Judge Kocoras into granting a stay and a severance as to the customer defendants by making misrepresentations and promises it had no

11

intention of keeping. As Berkeley describes it, Judge Kocoras's Order was the direct product of Teradata's misrepresentations. [*See* Dkt. #327, at 1 ("Teradata Broke its Promise to the Court."); at 2 ("... trusting Teradata to produce the promised discovery, the Court severed Customer Defendants from this matter and stayed the actions against them."); at 2 ("... despite Teradata's explicit promises to do so to this Court ...."); at 2 ("... it appears that Teradata's promises concerning discoverable materials have, all along, just been a ploy to deny access to the discoverable material."); at 7 ("... the Court should not reward Teradata's breach of its early promises that underlay the order granting the stay/severance."); at 10 (" ... Teradata's ploy to deprive it and this Court of discoverable material ...."); at 10 (" The Court issued the Order to Sever and Stay based on the information that was available at the time of its decision, but that situation either never existed or was changed, and Teradata's broken promises require this Court to now join Customer Defendants out of a need for justice in this case); at 11 ("This Court should not reward Teradata's unjust stratagem. . . . . Teradata broke its promise to this Court ....")].

Clearly, Berkeley's motion belongs under Fed.R.Civ.P. 60(b)(3), which allows for relief from an Order due to misrepresentation. But that won't do for Berkeley because Berkeley has waited almost four years to attack Judge Kocoras's March 2019 Order. A motion under Fed.R.Civ.P. 60(b)(3) has to be brought within a year of the judgment or Order. Fed.R.Civ.P. 60(c)(1)("A motion under Rule 60(b) must be made within a reasonable time--and for reasons (1), (2), and (3) no more than a year after the entry of the judgment or order or the date of the proceeding."). So, Berkeley had to mischaracterize a motion that repeatedly charges its opponent with making misrepresentations to the court as being properly brought, not under the Rule designed to address misrepresentations, but under the Rule designed to address "extraordinary circumstances." But that "option is available only

12

when Rules 60(b)(1) through (b)(5) are inapplicable." *Kemp v. United States*, – U.S.–, –, 142 S.Ct. 1856, 1861 (2022). *See also In re Cook Med., Inc.*, 27 F.4th 539, 544 (7th Cir. 2022)("To permit relief under the catchall provision" in this case "would render the one-year time limit meaningless."). That makes Berkeley's motion late by nearly three years! And that's reason enough to deny it.

If that seems too simple, for the sake of argument let's say that Berkeley's motion wasn't liberally peppered with allegations of misrepresentations – a generally foolish and fatal mode of proceeding – and could be brought under Fed.R.Civ.P. 60(b)(6). Relief under 60(b)(6) is available only upon a showing of extraordinary circumstances, and that's a high bar, *Gonzalez v. Crosby*, 545 U.S. 524, 536 (2005); *Banks v. Chicago Bd. of Educ.*, 750 F.3d 663, 668 (7th Cir. 2014), and one Berkeley doesn't even begin to clear.

Again, according to Berkeley, Judge Kocoras based his ruling on some promise Teradata made to him about producing unspecified discovery regarding the customer defendants. But that is a difficult characterization of Judge Kocoras's ruling to accept. Berkeley doesn't cite to any such representation in either of the two briefs Teradata filed in that proceeding. [Dkt. ##59-1, 77]. It didn't cite to any when it made the same arguments it raises now in a motion to reopen fact discovery back on July 26, 2022. [Dkt. #299]. The only thing from Teradata that Berkeley directs the court to is an assertion that "Teradata can fully address Plaintiff's claims." [Dkt. #327, at 2, 13]. Berkeley took that to mean Teradata would be providing discovery regarding the defendant customers. I cannot, of course, say what Judge Kocoras took that mean; I cannot crawl inside his head. *See, e.g.*, Posner, Overcoming Law, 276 (1995); *Arora v. Midland Credit Mgmt.*, No. 15 C 6109, 2022 WL 742427, at *1 (N.D. Ill. Mar. 11, 2022); *Beezley v. Fenix Parts, Inc.*, 328 F.R.D. 198, 202 (N.D. Ill.

13

2018); *Burkybile v. Mitsubishi Motors Corp.*, No. 04 C 4932, 2006 WL 3191542, at *5 (N.D. Ill. Oct. 18, 2006).

Indeed, Teradata and Berkeley have both been operating under varying interpretations of Judge Kocoras's Order as well.[6] But, reading Teradata's submissions in connection with Judge Kocoras's March 2019 ruling, I don't perceive any promises about such discovery:

> Thus, claims of infringement as to Grainger and DHL Express, and further downstream users, are wholly redundant of the claim against Teradata.[Dkt. #59-1, at 3]

> Plaintiff's own pleadings make clear that at issue is solely Teradata's TVA product. Any determination of infringement rests solely and entirely on this product. Thus, claims against downstream users are, by definition, peripheral. [Dkt. #59-1, at 5]

---

[6] Teradata's perception of Judge Kocoras's Order, it should be said, is extremely difficult to accept. As Teradata would have it, Judge Kocoras's Order did nothing to prevent Berkeley from proceeding against the customer defendants. [Dkt. #339, at 8-9]. Again, I have no insight into what Judge Kocoras was thinking in arriving at his ruling or what he had in mind regarding its import, but Teradata's interpretation makes little sense. Under Fed.R.Civ.P. 21, parties may be severed and dropped "on such terms as are just", or they may be severed and proceeded with separately. In other words, when a court severs a claim against a defendant and does not dismiss that defendant form the case, the suit simply continues against the severed defendant in another guise. *Elmore v. Henderson*, 227 F.3d 1009, 1011–12 (7th Cir. 2000); *DirecTV, Inc. v. Leto*, 467 F.3d 842, 845 (3rd Cir. 2006). Judge Kocoras didn't opt to dismiss the claims against the customer defendants, obviously, but he didn't allow those claims to continue either. He entered a stay of proceedings against the customer defendants. It appears from his Order, again, that the idea was that the claim against Teradata was central to the all the claims; if that were resolved, the claims against the customer defendants would go with it. [Dkt. #80, at 11-13, 15, 16, 17].

In severing and staying proceedings against the customer defendants, Judge Kocoras certainly had an eye toward reducing litigation burdens and discovery. [Dkt. #80, at 17]. That Judge Kocoras somehow had in mind severing the customer defendants and staying proceedings against them, but at the same time allowing discovery from the customer defendants to proceed unabated seems highly unlikely. As Judge Kocoras noted, the discovery into the two sets of claims would overlap significantly. [Dkt. #80, at 18]. If Judge Kocoras's Order allowed the interpretation that Teradata espouses, there would be nothing gained in terms of judicial economy. The bulk of every case, in terms of expense and judicial resources – and this case, more than others – *is* surely discovery, *see, e.g., Eggleston v. Chicago Journeymen Plumbers' Loc. Union No. 130, U. A.*, 657 F.2d 890, 901 (7th Cir. 1981)(discovery is "a runaway train"); *A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 1013 (4th Cir. 1986)(discovery is "a monster on the loose"); *Rossetto v. Pabst Brewing Co., Inc*., 217 F.3d 539, 542 (7th Cir. 2000)(discovery is "the bane of modern litigation"). and Teradata's interpretation would have had it proceeding on five different fronts rather than one.

14

Under the "customer-suit" doctrine, "litigation against or brought by the manufacturer of infringing goods takes precedence over a suit by the patent owner against customers of the manufacturer." [Dkt. #59-1, at 7]

All substantive issues regarding Grainger and DHL Express's liability would first be resolved in the action against Teradata. There can be no reasonable dispute that resolution of claims against Teradata substantially simplifies, if not eliminates entirely, the claims against all other Defendants. [Dkt. #59-1, at 8]

Teradata is without question the real party in interest. Plaintiff asserts infringement solely based on Teradata's TVA product. Moreover, Plaintiff does so based on the TVA application it contends is subject to a license going back to 2010. In other words, it is not the customization or knowledge by Teradata's subsequent customers that is at issue, it is Teradata's TVA. [Dkt. #77, at 1]

There can be no reasonable dispute that Teradata is the real party in interest, that Teradata's product is accused, and that a determination of whether Teradata's TVA meets the limitations of the Asserted Patents as construed will resolve this dispute.3 Indeed, if TVA does not meet each limitation of the asserted claims (or the claims are deemed invalid), this matter is over as to all Defendants. On the other hand, if TVA does meet the claim limitations, the narrow issue of what, if any, liability attaches to each Defendant will remain. Even as to that limited issue, the resolution as to Teradata will likely resolve Plaintiff's claims. [Dkt. #77, at 2]

A stay presents no prejudice or tactical disadvantage to Plaintiff in this case – Plaintiff will be able to focus its efforts on a single defendant and obtain resolution of its substantive claims. [Dkt. #77, at 3]

But the issue is not whether the non-Teradata Defendants have some redundant information; it is whether there is justification for dragging Teradata's customers into this litigation. To that end, Plaintiff's SAC clearly rests on Teradata's TVA as established in 2010 and takes issue with its implementation by certain customers. (Dkt. No. 41, at ¶¶ 51, 52, and 56-58). The SAC does not in any way suggest that infringement occurred as a result of "custom-built" functions (nor could it, as such a claim would completely undermine Plaintiff's claim of indirect infringement against Teradata). [Dkt. #77, at 4]

The underlying issue then is whether TVA satisfies each limitation of the asserted claims. This can be resolved as between Teradata and Plaintiff. There is no reason, and Plaintiff articulates none, that the non-Teradata Defendants are needed for this analysis. [Dkt. #77, at 5]

In sum, there simply are not any promises about discovery regarding the customer defendants.

If Judge Kocoras may have thought there were, I have no way to tell. From my perspective, Judge Kocoras's March 2019 ruling was based on Teradata being the real party in interest and the TVA being the key to the case. [Dkt. #80, at 11-12 ("We agree with the non-Teradata Defendants that Berkeley's infringement claims appear to take issue with the implementation of the TVA technology itself, and not with the ability to modify or customize it for a particular purpose."), at 12 (". . . Berkeley's infringement claims arise not out of some 'custom-built' functionality of its TVA technology, but implementation of the TVA technology itself."), at 13 ("It is also telling that, while accusing the non-Teradata Defendants of infringement, Berkeley has not suggested that the infringement occurred because of the "custom built" technology."), at 16 ("As discussed in great lengths above, the baseline analysis is the application of the asserted claims construed against the TVA technology. Berkeley has failed to demonstrate that its infringement claim is predicated upon the specific implementations of its TVA technology. Instead, Berkeley's infringement claims appear to be based solely on the functionalities of the TVA technology itself and the TVA's ordinary use of "determining object level profitability."]. If a broken promise could qualify as an extraordinary circumstance – and I'm not sure it does – I don't see one here. As such, there is another reason to deny Berkeley's motion.

Berkeley's other prong of attack on Judge Kocoras's March 2019 ruling seems be that the Judge got the law regarding direct and indirect infringement and the customer suit doctrine wrong. Berkeley's motion seems to suggest that its authors were only alerted to the law on these matters – and to a purported legal error by Judge Kocoras – as a result of the February 2, 2023 expert report from Teradata's rebuttal expert. [Dkt. # 327, at 3-4]. But that's a misrepresentation. Berkeley's

lawyer argued these very points to Judge Kocoras back in May of 2018, where they said: "Importantly, the customer-suit exception does not apply "'where the patentee alleges that the customers themselves have directly infringed the method or process disclosed in the patent.'" ("In the current suit, Plaintiff's allegations of direct infringement are directed towards Grainger, DHL Express, Air Express and Danzas; while allegations of indirect infringement are directed toward Teradata. As such, Grainger is a necessary party to the action and the customer-suit exception does not apply to this case."), at 7 ("Further, adjudication of the claims against Teradata will not necessarily resolve the claims against Grainger, DHL Express, Danzas and Air Express. . . . the specific issues of infringement are not entirely common as to Teradata and Grainger, DHL Express, Air Express and Danzas. Thus, severance of the claims against Grainger, DHL Express, Air Express and Danzas would greatly prejudice Plaintiff's case."). [Dkt. #71, at 5-7]. Judge Kocoras rejected those arguments in his March 2019 ruling.[7]

If Judge Kocoras committed an error of law in doing so – and it's unlikely he did – the correct avenue for relief would have been Fed.R.Civ.P. 60(b)(1), not 60(b)(6). *Kemp*, 142 S.Ct. at 1860. Rule 60(b)(1), like 60(b)(3), comes with a one-year time limit which, again, Berkeley has missed – by *a lot*. Fed.R.Civ.P. 60(c)(1); 142 S.Ct.at1860; *Blitch v. United States*, 39 F.4th 827, 834 (7th Cir. 2022). One is reminded of the Seventh Circuit's allusion to Twelfth Night: "'In delay there lies no plenty.'" *Sanders v. Venture Stores, Inc.,* 56F.3d 771, 775 (7th Cir. 1995). Thus, there is a third reason to deny Berkeley's motion. Three reasons are enough.

---

[7] Obviously, Berkeley had all the ammunition it needed to file a motion to vacate Judge Kocoras's March 2019 ruling long before the close of expert discovery *four years later*.

**CONCLUSION**

Measured by any reasonable standard, Berkeley waited far too long to try and derail expert discovery through a stay and to vacate Judge Kocoras's ruling under Fed.R.Civ.P.60(b)(1) or (b)(3). Even if Berkeley's motion could be regarded as properly filed under Fed.R.Civ.P. 60(b)(6), Berkeley has not only failed to show extraordinary circumstances, but has failed to show that the ruling was based on some broken promise to or by the Court. The inescapable reality presented by this case, is that four years is not a reasonable time in which to have brought a Rule 60(b)(6) motion. Under certain circumstances silence can be telling – and deafening – *City of Joliet v. New West, L.P.*, 562 F.3d 830, 836 (7th Cir. 2009)(Easterbrook, J.). *Cf. Georgia v. South Carolina*, 497 U.S. 376, 389 (1990)("What is legally significant is silence in the face of circumstances that warrant a response."); *United States v. Curescu*, 674 F.3d 735, 740 (7th Cir. 2012); *Wasson v. Peabody Coal Co.,* 542 F.3d 1172, 1175 (7th Cir. 2008)(Plaintiff had ample time to determine whether additional discovery was necessary, 'but he chose to sit on the matter."); *Motorola Sols., Inc. v. Hytera*, 2018 WL 2254790, *3 (N.D.Ill. 2018) – and it most assuredly is here. Berkeley was aware of the *supposed* basis for its motion to vacate long before the final days of discovery in this case, as its previous filings demonstrate. And it did nothing. Berkeley's motion attempts to paint Judge Kocoras's March 2019 ruling as the most significant Order in this case – an obstacle to making out its infringement claims. Yet it did nothing. While wisdom often comes slowly, it certainly doesn't come nearly as slowly as Berkeley's motion would have one believe. Four years is, to put it charitably, an exceedingly long time for the plaintiff and its team of lawyers to mull over a motion to vacate. Berkeley would have been prudent to have abided by the Seventh Circuit's admonition: "'[d]efer no time delays have dangerous ends.' Henry VI, Part I (1592) Act III, sc. ii 1.33." *United States v. Golden Elevator, Inc.,*

27 F.3d 301, 302 (7th Cir.1994). But it chose not to. Accordingly, Berkeley's Motion to Stay Discovery [Dkt. #328] is denied, and I recommend that Berkeley's Motion to Vacate the Court's Order to Sever and Stay [Dkt. #327] be denied.

ENTERED: _____
UNITED STATES MAGISTRATE JUDGE

**DATE:** 3/7/23