**IN THE UNITED STATES DISTRICT
COURT NORTHERN DISTRICT OF
ILLINOIS EASTERN DIVISION**

| | |
|---|---|
| BERKELEY*IEOR d/b/a B*IEOR, a Nevada Corporation, | |
| Plaintiff, | |
| v. | Case No.: 1:17-cv-07472 |
| | Judge Charles P. Kocoras |
| TERADATA OPERATIONS, INC., | **REDACTED** |
| Defendant. | |

**PLAINTIFF BERKELEY*IEOR'S RESPONSE TO DEFENDANT TERADATA
OPERATIONS, INC.'S LOCAL RULE 56.1(a)(3) PROPOSED STATEMENT OF FACTS
TO ITS MOTION FOR SUMMARY JUDGMENT**

Plaintiff Berkeley*IEOR ("Berkeley"), by and through its undersigned counsel, hereby

responds to Defendant Teradata Operations, Inc.'s ("Defendant") Proposed Statement of Facts in

Support of its Motion for Summary Judgment.

Generally, Berkeley objects to Defendants' Statement of Facts as improper. Local Rule

56.1(d)(1) states that a "statement of material facts [] must consist of concise numbered

paragraphs" and 56.1(d)(4) states that "statements of material facts [] should not contain legal

argument." Defendants' Statement of Facts is a factual narrative combining multiple immaterial

assertions, many of them statements of opinion rather than fact, into each paragraph. "[T]he

numbered paragraphs should be short; they should contain only one or two individual allegations,

thereby allowing easy response. Again, it is inappropriate to confuse the issues by alleging multiple

facts in a single paragraph in hopes of one's opponent missing one." *Malec v. Sanford*, 191 F.R.D.

581, 583 (N.D. Ill. 2000). "[T]he object of Rule 56(e) [governing summary judgment affidavits]

is not to replace conclusory allegations of the complaint or answer with conclusory allegations of

an affidavit." *Id.* at 585 (quoting *Linc Fin. Corp. v. Onwuteaka*, 129 F.3d 917, 920 (7th Cir. 1997)). Berkeley further responds to each statement in detail below as follows:

## I. The Asserted Patents and Claims

1. Plaintiff Berkeley*IEOR ("Berkeley") is asserting the following patents against Teradata Operations, Inc. ("Teradata"): U.S. Patent No. 7,596,521 ("the '521 patent"); U.S. Patent No. 7,882,137 ("the '137 Patent"); and U.S. Patent No. 8,612,316 ("the '316 Patent") (collectively, the "Asserted Patents"). (Dkt. 41 at ¶ 23-25).

**<u>RESPONSE:</u>**

Admitted.

2. Berkeley originally asserted the following claims against Teradata: claims 1-4 of the '521 patent; claims 1 and 2 of the '137 Patent; and claims 1 and 2 of the '316 Patent (the "Asserted Claims"). (Dkt. 41 at ¶ 71).

**<u>RESPONSE:</u>**

Admitted, in part, that Berkeley did assert Claim 1-4 of the '521 patent, claims 1 and 2 of the '137 patent, and claims 1 and 2 of the '316 patent. Denied to the extent that paragraph 2 sufficiently and/or fully captures comprehensively the extent of Berkeley's claims and assertions in this litigation.

3. However, the Court's subsequent claim construction order rendered claim 4 of the '521 patent invalid as indefinite. (Dkt. 164).

**<u>RESPONSE:</u>**

Berkeley objects to this statement to the extent it mischaracterizes this Court's June 14, 2022 Claim Construction Order [Dkt. 279]. Berkeley admits that the Order found claim 4 invalid as indefinite but denies any other inference or conclusion Defendant may attempt to draw in paragraph three.

[Dkt. 279].

4.      Claim 1 of the '521 patent is representative of the Asserted Claims of the patents in suit for the purpose of analysis under 35 U.S.C. § 101. (*See* Dkt. 119 at 3; Dkt. 295 at 3 n.3; Ex. C, Scarbrough Rep. at ¶¶ 34-35).

**RESPONSE:**

Berkeley objects to this statement to the extent it mischaracterizes its position on this issue. Berkeley admits and agrees with the characterization of the Court that "For purposes of this motion [Section 101], Berkeley is willing to treat—but does not concede—claim 1 of the '521 Patent as a representative claim for simplicity's sake." [Dkt. 119 at 3]. Berkeley admits that its position remains consistent with the Court's characterization at [Dkt. 119 at 3].

5.      Limitation 1[d] of the '521 patent reads "using the relational database management system to independently calculate at least one marginal value of profit for each object being measured using the established rules as applied to a selected set of prepared information." (Dkt. 297, Ex. 1 at col. 30, ln. 67).

**RESPONSE:**

Admitted.

6.      In a declaration submitted to the USPTO during prosecution of the '521 patent, the inventor stated that he "implemented the invention within a relational database." (Dkt. 106-1, Ex. C at ¶ 27).

**RESPONSE:**

Berkeley admits that the indicated quotation cited by Defendant appears in a declaration submitted to the USPTO during the prosecution of the '521 patent. Berkeley denies any other inferences Defendant attempts to draw directly or indirectly therein.

## II.     Lead up to Litigation and CBMs

7.      Plaintiff alleges that "[i]n July 2010, the parties met in-person to discuss, among other things, the '521 Patent and then-existing implementations of TVA. During that meeting, Teradata took the position that it and some of its customers were discontinuing use of TVA …." (Dkt. 41, Second Amended Complaint ("SAC") ¶ 58).

**RESPONSE:**

Berkeley admits that the SAC ¶ 58 contains the language cited. Berkeley denies any further inferences Defendant attempts to draw directly or indirectly therein.

8.      ████████████████████████████████████████

████████████████████

**RESPONSE:**



9.      On March 26, 2018, Berkeley filed its five-count Second Amended Complaint ("SAC"), alleging claims for direct infringement of the Asserted Patents against the non-Teradata Defendants in Counts I-IV, and a claim for indirect infringement of the Asserted Patents by Teradata in Count V.  (*See* Dkt. 41).

**RESPONSE**:

Admitted.

10.      In its SAC, Plaintiff has alleged that "[a]t least Grainger, DHL Express, Danzas,

and Air Express perform the steps recited in the Asserted Claims and, thus, directly infringe those claims," (SAC ¶¶ 233-234).

**RESPONSE:**

Admitted.

11. However, this Court severed and stayed Counts I-IV against the non-Teradata Defendants. (*See* Dkt. 80).

**RESPONSE:**

Admitted to the extent the Court's March 7, 2019 Order severed and stayed the non-Teradata Defendants from this instant action. Denied to the extent Defendant attempts to draw any inferences directly or indirectly therein. Denied to the extent the Court's sever and stay Order [Dkt. 80] has any relevance to Berkeley's claims of infringement against the non-Teradata Defendants.

12. On November 12, 2018, Teradata initiated six Covered Business Method ("CBM") reviews challenging the Asserted Patents before the Patent Trial & Appeal Board ("PTAB"). (Dkt. 92).

**RESPONSE:**

Admitted.

13. However, the CBMs were not instituted because the PTAB determined the subject matter was not appropriate for a CBM. (Dkt. 279-4, Ex. D at 16 fn. 8 ("Because we have determined that Petitioner has not established that the '521 patent is eligible for CBM review, we need not address the merits of Petitioner's patentability challenges to these claims presented in the Petition.")).

**RESPONSE**:

Admitted to the extent Defendant accurately quotes Dkt. 279-4, Ex. D at 16 fn. 8 and that the

CBMS were denied institution. Berkeley denies Defendant's characterization of the results of the CBM proceedings to the extent Defendant attempts to imply the CBM's review was incomplete or insufficient.

14.     The subject matter eligibility of the Asserted Patents under 35 U.S.C. § 101, were not examined or determined by the PTAB. (Dkt. 279-4).

**RESPONSE:**

Berkeley denies and objects to the conclusions of paragraph fourteen and disagrees with Defendant's characterization of the CBM proceedings. In denying institution under the "technological invention" prong of 37 C.F.R. § 42.301(b), the PTAB held that the Asserted Patents "solve a technical problem using a technical solution" and that "the prosecution history of the '521 patent, provides support for Patent Owner's contentions that the above-noted claim recitations describe a distinctive software-based process that harnesses benefits to computer performance. A process that improves computer efficiency and permits desirably faster calculation performance suggests a technical solution to a technical problem." *See* [Dkt. 92-1 to 92-5]; *see also Teradata Operations, Inc. et al. v. Berkeley\*IEOR*, CBM2019-00015, p. 16

**III.     Teradata's Motion to Dismiss**

15.     On August 29, 2019, Defendant Teradata moved to dismiss Count V under Federal Rule of Civil Procedure 12(b)(6), alleging that the Asserted Patents were invalid as directed to patent-ineligible subject matter under 35 U.S.C. § 101. (Dkt. 104; Dkt. 105).

**RESPONSE:**

Admitted to the extent Defendant filed the indicated motion. Berkeley denies and objects that Defendant's motion was improper and further believes the underlying merits of that motion to be baseless. See [Dkt. 295].

16.     The Court applied the Federal Rule of Civil Procedure 12 standard, drawing all

inferences in favor of Plaintiff based on the pleadings. (Dkt. 119 at 11).

**RESPONSE:**

Admitted that Defendant raised the motion under Fed. R. Civ. P. 12(b)(6). Admitted that the Court held that the "SAC sufficiently alleges that the claimed unconventional combination improves the functioning and operation of the computer itself by performing parallel computations in a faster amount of time. *See Cellspin Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306, 1315 (Fed. Cir. 2019)". [Dkt. 119 at 15]. Berkeley denies any inference by Defendant that the Court's findings were somehow incomplete or incorrect. [Dkt. 119 at 11]. The remaining allegations and inferences Defendant attempts to draw from paragraph 16 are denied.

17.     This Court determined that the patents failed to pass *Alice* Step One even when all of Plaintiff's well-pled allegations were accepted as true. (Dkt. 119 at 11).

**RESPONSE:**

Berkeley admits that the Court's March 25, 2020 Order found the Asserted Claims did not pass *Alice* Step One. [Dkt. 119]. However, Berkeley denies Defendant's characterization of the Court ruling. [Dkt. 119]. Berkeley further objects and argues in its instant response memorandum that recent case law under the *Alice* test and section 101 eligibility support its position that the Asserted claims are not directed towards an abstract idea and pass *Alice* Step One. [*See* Dkt. 295 at 12-15].

18.     The Court found the patents were directed to an abstract concept. (Dkt. 119 at 11).

**RESPONSE:**

Admitted that the Court's March 25, 2020 order speaks for itself and found at that time that the Asserted Patents were directed to an abstract concept. Berkeley objects to any additional inferences Defendant directly or indirectly attempts to draw therein.

19.     "The Court f[ound] that the claims here are ineligible because their innovation is

in an ineligible subject matter. The claims do no more than prepare, organize, and apply mathematical calculations to existing information. No matter how much of an advance in the business field the claims recite, the advance lies entirely in the realm of abstract ideas." (Dkt. 119 at 11).

**RESPONSE:**

Admitted that the Court's March 25, 2020 Order states what is included in paragraph nineteen and that the Order speaks for itself. Berkeley objects to any additional inferences Defendant directly or indirectly attempts to draw therein.

20.     The Court, however, allowed the matter to proceed under the Rule 12 standard as it relates to *Alice* Step 2. (Dkt. 119 at 15).

**RESPONSE:**

Berkeley objects to Defendant's characterization that the Court's reasoning was somehow incorrect and incomplete. Berkeley admits that the Court found the Asserted Claims are "an inventive concept, and Teradata's motion to dismiss is therefore denied." [Dkt. 119 at 15].

21.     Specifically, the Court noted that "[d]rawing reasonable inferences in favor of Berkeley, as this Court must at the Rule 12(b)(6) stage, the [Second Amended Complaint] sufficiently alleges that the claimed unconventional combination improves the functioning and operation of the computer itself by performing parallel computations in a faster amount of time." (Dkt. 119 at 15).

**RESPONSE:**

Admitted that the Court's March 25, 2020 Order contains speaks for itself. Berkeley objects to any characterization by Defendant that the Court's conclusion as to *Alice* Step Two was in any way flawed or incorrect. [See Dkt. 295].

22.     In opposing Teradata's motion to dismiss, Plaintiff took the position that the invention "take[s] advantage of the RDBMS calculation capabilities" (Dkt. 106 at 9), and the inventive concept is found in the combination of three "known, conventional pieces" (Dkt. 106 at 11).

**RESPONSE:**

Admitted that Defendant cites statements contained within Berkeley's briefing at that specific time. Berkeley objects and denies that paragraph twenty-two contains improper legal argument by Defendant Teradata and that it fails to accurately and comprehensively represent the full extent of Berkeley's position.

23.     The Court noted that Plaintiff had argued that "limitation 1[d] within the Asserted Patents improved on the prior technological process for determining object level profitability and, therefore, makes the Asserted Patents non-abstract." (Dkt. 119 at 11).

**RESPONSE:**

Admitted that Defendant cites to this Court's March 25, 2020 Order accurately.

24.     For the purposes of evaluating the asserted claims for Teradata's motion to dismiss, the Court found it appropriate to treat claim 1 of the '521 patent as representative of all asserted claims. (Dkt. 119 at 3).

**RESPONSE:**

Berkeley objects to this statement to the extent it mischaracterizes its position on this issue. Berkeley admits and agrees with the characterization of the Court that "For purposes of this motion [Section 101], Berkeley is willing to treat—but does not concede—claim 1 of the '521 Patent as a representative claim for simplicity's sake." [Dkt. 119 at 3].

25.     In its ruling on the Motion, the Court determined that the exemplary claim, claim

1 of the '521 patent, was directed to an abstract idea of "using [a] relational database management system to calculate" the profit values attributable to certain objects, and that the claims failed the first step of the Alice test for patentable subject matter, finding that "[t]he claims do no more than prepare, organize, and apply mathematical calculations to existing information. No matter how much of an advance in the business field the claims recite, the advance lies entirely in the realm of abstract ideas." (Dkt. 119 at 11). The Court further found that "the 'character of the whole [claim]' involves the overarching method of performing profitability calculations with a computer system. Accordingly, the character as a whole [of the asserted claims], not just an isolated limitation, is directed to excluded subject matter because calculating profitability is an abstract idea." Id.

**RESPONSE:**

Berkeley admits that the Court's March 25, 2020 Order is quoted accurately by Defendant. Berkeley objects to Defendant's characterization as it believes recent case law supports Berkeley's position that the Asserted claims are not directed to an abstract idea. [See Dkt. 295]. Further, Berkeley denies paragraph twenty-five to the extent it contains improper legal argument.

26.     According to the Court, "[t]he '521 Patent claims a method whereby a business starts with data in the form of financial statements, that data is processed via a RDBMS where multiple profitability factors are handled independently and simultaneously, and the output is the same data in the new form of object level profitability." (Dkt. 119 at 11-12).

**RESPONSE:**

Berkeley admits that the Court's March 25, 2020 Order contains the language cited. Berkeley objects to Defendant's characterization as it believes recent case law supports Berkeley's position that the Asserted claims are not directed to an abstract idea. [See Dkt. 295]. Further, Berkeley denies paragraph twenty-six to the extent it contains improper legal argument.

27.    The Court noted that "Berkeley alleges in the SAC that the inventive concept of the Asserted Patents is found in the non-conventional and non-generic arrangement of the claim limitations." (Dkt. 119 at 14).

**RESPONSE:**

Berkeley admits that the Court's March 25, 2020 Order states the quotation cited by Defendant. Berkeley objects and denies any further inferences Defendant attempts to draw therein.

28.    The Court evaluated Plaintiff's allegations applying the legal standards for a Rule 12(b)(6) Motion to Dismiss, in which the Court is required to accept Plaintiff's factual allegations as true. (Dkt. 119 at 15-16).

**RESPONSE:**

Admitted that the Court's March 25, 2020 Order was entered with respect to Defendant's Rule 12(b)(6) Motion to Dismiss. Berkeley objects and denies Defendant's implied characterization that the Court's conclusion as to *Alice* Step Two was in any way flawed, incomplete, or incorrect. [See Dkt. 295].

29.    Drawing "reasonable inferences in favor of Berkeley," the Court determined that at the pleadings stage, there existed an issue of material fact as to whether the patent claims passed Step Two of the *Alice* test. (Dkt. 119 at 15-16).

**RESPONSE:**

Berkeley admits the Court's March 25, 2020 Order contains the language cited by Defendant. Berkeley denies Defendant's characterization and argues that the Court held the Asserted Patents "claim[] unconventional combination improves the functioning and operation of the computer itself by performing parallel computations in a faster amount of time." [Dkt. 119 at 15]. Berkeley objects and denies Defendant's implied characterization that the Court's conclusion as to *Alice*

Step Two was in any way flawed, incomplete, or incorrect. [See Dkt. 295].

30.     The Court found that the claims do not cover any new structural elements, but rather combine only "known conventional pieces." (Dkt. 119 at 14-16).

**RESPONSE:**

Berkeley denies the allegations of paragraph thirty and argues that the Court articulated in its March 25, 2020 Order that the Asserted Patents "claimed unconventional combination improves the functioning and operation of the computer itself by performing parallel computations in a faster amount of time." [Dkt. 119 at 15].

31.     In so doing, the Court determined that Plaintiff adequately alleged an inventive concept that includes the combination of:

> at least three concepts to achieve the desired result: (1) the RDBMS itself performs profitability calculations, which provides speed and efficiency; (2) the calculations execute "independently" of each other, allowing the method to take advantage of parallel processing capabilities that further improve on speed and efficiency; and (3) the method uses established rules as applied to a selected set of prepared information to perform the calculations.

(Dkt. 119 at 15). Later, Plaintiff quoted this same language in its Memorandum in Support of Plaintiff's Motion for Summary Judgment. (Dkt. 295 at 9).

**RESPONSE:**

Berkeley admits the quotations cited accurately reflect the Court's March 25, 2020 Order. Berkeley objects to the extent paragraph thirty-one is comprehensive of its and/or the Court's entire position on the issue of patent eligibility.

32.     Specifically, the Court found that Plaintiff had adequately alleged an inventive concept under Step Two of the *Alice* test, which precluded dismissing the claim under the 12(b)(6) standard, stating that:

> Drawing reasonable inferences in favor of Berkeley, as this Court must at the Rule

12(b)(6) stage, the SAC sufficiently alleges that the claimed unconventional combination improves the functioning and operation of the computer itself by performing parallel computations in a faster amount of time.

(Dkt. 119 at 15).

**RESPONSE:**

Berkeley admits the quotations cited accurately reflect the Court's March 25, 2020 Order. Berkeley objects to the extent paragraph thirty-one is comprehensive of its and/or the Court's entire position on the issue of patent eligibility.

33. In its decision denying Teradata's motion to dismiss, the Court did not find that Berkeley had proven its allegations on the merits. (Dkt. 119 at 14-15).

**RESPONSE:**

Berkeley denies and objects to the characterization by Defendant of the Court's March 25, 2020 Order. The Court's Order argued Berkeley's Asserted Claims were patent eligible because "the Asserted Patents "claimed unconventional combination improves the functioning and operation of the computer itself by performing parallel computations in a faster amount of time." [Dkt. 119 at 15].

**IV. Claim Construction**

34. As part of claim construction, and pursuant to the Local Rules, the parties submitted a Joint Appendix on March 12, 2021. (Dkt. 164). This Joint Appendix included a chart with six terms and their agreed-upon constructions:

| Term | Agreed-Upon Construction |
|---|---|
| "preparing information to be accessed electronically through the relational database management system" | "selecting, extracting, and manipulating data from a source outside the relational database management system so as to render the data compatible with and accessible by the relational database management system" |

| "relational database management system" | "a relational database and software to manage the relational database" |
|---|---|
| "rules" | Subject to 112 ¶ 6 |
| "to create a measure" | "defining a metric by the object for which profitability is sought" |
| "fully absorbed profit adjustment value" | "the allocation of indirect expense to an object" |
| "object level profitability" | "the profitability of the smallest common component of a business on which profit can be measured" |

(Dkt. 164 at 2).

**RESPONSE:**

Berkeley admits that the court filings at [Dkt. 164] contain the proposed Joint Appendix that Defendant cites. Berkeley objects to the characterization and position of Defendant that these terms are operative in this instant litigation. *See* [Dkt. 313]. The Court explicitly refused to enter these constructions into the Court's claim construction opinion. [Dkt. 313].

35.     When the agreed-upon terms from the Joint Appendix were not included in the Court's Claim Construction Order (Dkt. 279), Plaintiff objected to entering the terms into the record, instead, rescinding any agreement regarding the construction of the terms. (Dkt. 285 at 1-3).

**RESPONSE**:

Berkeley objects to the characterization and position of Defendant that these terms are operative in this instant litigation. *See* [Dkt. 313]. The Court explicitly refused to enter these constructions into the Court's claim construction opinion. [Dkt. 313].

36.     In its Claim Construction Order, the Court construed the disputed terms as follows:

| Term | Adopted Construction |
|---|---|

| | |
|---|---|
| "comprising the steps of," *i.e.,* order of steps | *No specific order to the steps of the claims* |
| "for each object being measured" | "for each of the smallest common component of profit being measured" |
| "to independently calculate" | "running in the relational database management system the corresponding formulas for 'at least one marginal value of profit,' where one calculation does not depend on the other." |
| "one marginal value of profit" | "the difference between an object's marginal revenue and the marginal cost of producing that object." |
| "computerized profit database having profit information" | "computer database having profit information." |
| "opportunity values for funds used or supplied" | "the cost for funds used or revenue for funds supplied." |
| "performing the correct profit calculus" | *indefinite* |

(Dkt. 279 at 6, 8-9, 11-13).

**RESPONSE:**

Admitted.

37.     At Plaintiff's urging, the Court broadly construed the term "independently calculate" to merely require calculations in a manner "where one calculation does not depend on the other" and expressly rejected Teradata's proposed construction that would have required calculations to be performed "simultaneously." (Dkt. 279 at 8).

**RESPONSE:**

Berkeley admits that its proposed construction was accepted by the Court. [Dkt. 279 at 8]. Berkeley objects and denies to any further inferences or characterizations Defendant attempts to draw in paragraph thirty-seven or that the Court's conclusions were incorrect or incomplete.

38.     In doing so, the Court found that "[t]he claims intentionally provide direction to

perform the independent calculations simultaneously, sequentially, or if necessary, not perform some of them at all." (Dkt. 279 at 8).

**RESPONSE**:

Berkeley admits that the Court's June 14, 2022 Claim Construction Order states the language cited. Berkeley objects and denies any other inference Defendant attempts to draw therein.

> 39.     The Claim Construction Order further elaborated that:
>
> Although the patented invention describes performing the independent calculations simultaneously in an embodiment, there is no necessity to do so, and no such limitation is recited. The claims intentionally provide direction to perform the independent calculations simultaneously, sequentially, or if necessary, not perform some of them at all. We therefore adopt Berkeley's proposed construction of "running in the relational database management system the corresponding formulas for 'at least one marginal value of profit,' where one calculation does not depend on the other.

(Dkt. 279 at 7-8). Specifically, the Court construed the term "independently calculate" to not require parallel calculation or parallel processing or even that more than one calculation is made. (*Id.*)

**RESPONSE:**

Berkeley admits that the Court's June 14, 2022 Claim Construction Order includes the language cited by Defendant. Berkeley objects and denies any other inference Defendant attempts to draw therein.

**V.     Plaintiff's Motion for Summary Judgment**

40.     In September 2022, Plaintiff filed a Motion for Summary Judgment asking the Court to affirmatively find the Patents-in-Suit were patent-eligible under 35 U.S.C. § 101. (Dkt. 296). Plaintiff's motion was filed before either Plaintiff or Teradata had exchanged expert reports or deposed each other's experts.

**RESPONSE:**

Berkeley admits that it filed a Motion for Summary Judgment in September 2022 for the Court to affirmatively find that the Patents-in-Suit are patent-eligible under 35 U.S.C. § 101. Berkeley denies the remainder of paragraph forty or any argument by Defendant that Berkeley's motion was untimely. [Dkt. 294].

41.     Plaintiff's summary judgment motion has been fully briefed.  As of the filing of this motion, oral argument has not been scheduled and the Court has not ruled on Plaintiff's Motion for Summary Judgment (*See* Dkts. 308 and 320).

**RESPONSE:**

Admitted.

42.     In its briefing, Plaintiff quoted the Court's previous ruling on 35 U.S.C. § 101, reiterating that the inventive concept of the Patents in Suit includes the combination of:

> at least three concepts to achieve the desired result: (1) the RDBMS itself performs profitability calculations, which provides speed and efficiency; (2) the calculations execute "independently" of each other, allowing the method to take advantage of parallel processing capabilities that further improve on speed and efficiency; and (3) the method uses established rules as applied to a selected set of prepared information to perform the calculations.

(Dkt. 295 at 9 (citing Dkt. 119 at 15)).

**RESPONSE:**

Admitted.

## VI.    Expert Discovery

43.     The parties have now exchanged expert reports and all expert depositions were taken by February 23, 2023, as scheduled. (*See* Dkt. 345).

**RESPONSE:**

Berkeley admits that the expert depositions were taken on or before February 23, 2023. Berkeley maintains the objections stated on the record during each and every expert deposition that:

["Plaintiff Berkeley hereby states and reserves all rights and objects to the commencement of the taking of [these] deposition[s] based on its currently pending motions before the Court. Plaintiff Berkeley filed two motions on February 14, 2023: First a motion to vacate the March 17, 2019, order that severed and stayed the customer defendants from this action, Docket 327. And second, a motion to extend the expert discovery schedule while its motion to vacate is pending before the Court, Docket 328. Plaintiff Berkeley states that vacatur of the Court's prior sever and stay order is warranted. Plaintiff believes that after it obtains critical discovery from the customer defendants in this matter, any expert reports, opinions, calculations, or conclusions addressed or explored in [these] deposition[s] will be materially affected. Plaintiff Berkeley reserves all rights to seek additional supplemental depositions should facts and circumstances warrant." [Scarbrough Dep., 7: 23-9:3].

44.     On March 7, 2023, Magistrate Judge Cole denied Plaintiff's Motion to Stay Expert Discovery. (Dkt. 345).

**RESPONSE:**

Berkeley objects to Magistrate Judge Cole's March 7, 2023 Order for all the reasons articulated in its response to paragraph forty-three. Berkeley admits that [Dkt. 345] is Magistrate Judge Cole's Order denying Berkeley's motion.

45.     In his Opinion denying the stay of expert discovery, Judge Cole stated that "[i]t's clear that [Plaintiff's] position is that the court had no right to deny its motion for a stay, and that [Teradata] had no right to respond to [Plaintiff's] motion. That certainly qualifies as hubris of the highest order.  [Plaintiff's] motion to stay expert discovery, filed in the nineteenth week of a twenty-week expert discovery window, and in the one hundred and thirty-ninth week of a one-hundred-and-forty-week discovery schedule, is denied.")). (Dkt. 345 at 9). Expert discovery is now

closed. (Dkt. 345).

**RESPONSE:**

Berkeley admits that Judge Cole's March 7, 2023 Order contains the language cited. Berkeley denies any and all inferences Defendant attempts to draw from this specific quotation from Judge Cole's Order and refers to its objections articulated in paragraph forty-three.

46.     Plaintiff alleges that the two improvements over the prior art associated with the asserted claims are: "Limitation 1[d(i)] - performing core profitability calculations inside a relational database management system ("RDBMS"), rather than performing calculations inside a procedural-based software application, as was done previously; and Limitation 1[d(ii)-(iii)] – decomposing profitability factors into independent calculations so the RDBMS could perform multiple calculations simultaneously (i.e., in parallel) and on separate processors. Stuchfield is silent on either of these technology capabilities (i.e. calculation inside the database and calculations done independently)." (Ex. C, Scarbrough Rep. at ¶ 50; *see* Ex. B, Scarbrough Dep. Tr. at 187:9-188:4).

**RESPONSE:**

Berkeley admits that Mr. Scarbrough's expert report contains the cited quotation and refers to his entire report. [*See e.g.*, Scarbrough Rebuttal Rep. ¶48-63] for a complete summary of his opinions.

47.     Performing calculations inside a procedural-based software application was previously known in the prior art. (Ex. B, Scarbrough Dep. Tr. at 188:6-21).

**RESPONSE:**

Berkeley denies the allegations of paragraph forty-seven as it contains an improper legal argument by Defendant attempting to misconstrue the testimony of Mr. Scarbrough. Mr. Scarbrough's full testimony and report provide a more accurate context on this topic. [*See e.g.*, Scarbrough Rebuttal Rep. ¶48-63].

48.     It was known in the prior art to perform profitability calculations at the object level in procedural-based software applications. (Dkt. 297-4, CBM2019-00015 at 15, Ex. C, Scarbrough Rep. at ¶ 50, 62, 86-87).

**RESPONSE:**

Berkeley denies any and all inferences Defendant attempts to draw from this conclusion. Mr. Scarbrough specifically testified how the Asserted Patents and Claims "discloses and recite *specific ways to take advantage of RDBMS capabilities and parallel processing that improved upon the capabilities and performance of traditional procedural-based computer software* for computing object level profitability." [Scarbrough Rebuttal Rep. at ¶ 63.]. (Emphasis added).

49.     The alleged gain in speed benefits from parallel computation comes from performing the calculations simultaneously.  (Ex. B, Scarbrough Dep. Tr. at 189:9-18; Ex. C, Scarbrough Rep. at ¶ 50).

**RESPONSE:**

Berkeley denies the conclusion of paragraph forty-nine and objects that Defendant improperly attempts to provide legal argument cherry-picking the testimony of Mr. Scarbrough. Berkeley argues that a more accurate assertion would be to say that the alleged gain in speed benefits from parallel computation comes from performing the calculations *independently*. [Scarbrough Deposition 95:20 –98:20.

50.     Performing calculations simultaneously is the same as performing them in parallel. (Ex. C, Scarbrough Rep. at ¶ 50 ("perform multiple calculations simultaneously (i.e., in parallel)").

**RESPONSE:**

Berkeley admits that Mr. Scarbrough's report contains the cited quotation. Berkeley denies all other inferences that Defendant attempts to draw in paragraph fifty and denies those allegations

as improper legal argument, as Defendant attempts to misconstrue the testimony of Mr. Scarbrough.

51.     The asserted claims do not require "that the relational database management system be on a particular piece of hardware." (Ex. B, Scarbrough Dep. Tr. at 116:11-18).

**RESPONSE:**

Berkeley admits that Mr. Scarbrough's testimony contains the cited quotation. Berkeley denies all other inferences that Defendant attempts to draw in paragraph fifty-one and denies those allegations as improper legal argument.

52.     Regarding the RDBMS, Plaintiff's expert stated that "when we're talking about calculating components of profit, by inference, it's got to be in the database. It can't be done somewhere else.  that's the only conclusion that you can come to." (Ex. B, Scarbrough Dep. Tr. at 178:20-179:23).

**RESPONSE:**

Berkeley admits that Mr. Scarbrough's testimony contains the cited quotation. Berkeley denies all other inferences that Defendant attempts to draw in paragraph fifty-two and denies those allegations as improper legal argument.

53.     Claim 1 of the '521 patent, as written, covers a process in which one marginal value of profit is calculated for each object. (Ex. B, Scarbrough Dep. Tr. 89:18-90:1).

**RESPONSE**:

Berkeley objects to the conclusion of paragraph fifty-three as improper legal argument as it omits critical limitations articulated in Claim 1 of the '521 patent that further specify the full scope of the Asserted Claims and because it misconstrues the testimony of Mr. Scarbrough.

54.     The asserted claims cover instances in which the system measures profitability for

only one object. (Ex. B, Scarbrough Dep. Tr. at 91:20-92:3).

**RESPONSE**:

Berkeley objects to the conclusion of paragraph fifty-four as improper legal argument as it omits critical limitations articulated in Claim 1 of the '521 patent that further specify the full scope of the Asserted Claims and because it misconstrues the testimony of Mr. Scarbrough.

55.     A system that does not perform calculations in parallel would not yield the speed and efficiency enhancements attributed to the claimed invention (Ex. B, Scarbrough Dep. Tr. at 97:24-98:20),

**RESPONSE:**

Berkeley denies any and all inferences Defendant attempts to draw from this conclusion. Mr. Scarbrough specifically testified how the Asserted Patents and Claims "discloses and recite **specific ways to take advantage of RDBMS capabilities _and_ parallel processing** that improved upon the capabilities and performance of traditional procedural-based computer software for computing object level profitability." [Scarbrough Rebuttal Rep. at ¶ 63.]. (Emphasis added).

56.     Although a system that performs sequential calculations can do calculations that are independent from each other, any speed enhancements arise purely from performing such calculations in parallel at the same time, rather than sequentially. (Ex. B, Scarbrough Dep. Tr. at 100:9-24).

**RESPONSE:**

Berkeley denies any and all inferences Defendant attempts to draw from this conclusion. Mr. Scarbrough specifically testified how the Asserted Patents and Claims "discloses and recite **specific ways to take advantage of RDBMS capabilities _and_ parallel processing** that improved upon the capabilities and performance of traditional procedural-based computer software for

computing object level profitability." [Scarbrough Rebuttal Rep. at ¶63.]. (Emphasis added). Berkeley further objects because paragraph 56 further misconstrues the testimony of Mr. Scarbrough.

57.     During the CBM proceedings, Mr. Scarbrough opined that "use of the RDBMS to perform profitability calculations 'results in significantly improved performances [sic] relative to procedural based software' and represents a 'specific way for the computer to achieve greater speed and efficiency in calculating profitability.'" (Dkt. 297-4, CBM2019-00015 at 15; *see* Ex. C, Scarbrough Rep. at ¶ 95).

**RESPONSE:**

Berkeley admits that paragraph fifty-seven contains an accurate quotation to Mr. Scarbrough's testimony during Defendant's failed attempt to institute CBM proceedings. The remainder of Defendant's conclusions and any inferences it attempts to draw from those conclusions are objected to and denied by Berkeley.

58.     If the claimed system did not perform calculations in parallel, it would not yield the speed and efficiency enhancements that Plaintiff attributes to the claimed invention. (Ex. B, Scarbrough Dep. Tr. at 9:11-22, 98:8-18, and 100:15-24).

**RESPONSE:**

Berkeley denies the allegations of paragraph fifty-eight as Mr. Scarbrough's report details additional benefits the Asserted Claims provide over the prior art.

59.     Plaintiff has alleged that "[a]t least Grainger, DHL Express, Danzas, and Air Express perform the steps recited in the Asserted Claims and, thus, directly infringe those claims," (SAC ¶¶ 233-234).

**RESPONSE:**

Admitted.

60. █████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████

**RESPONSE:**

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

█████████████████████████████████

61. █████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████

**RESPONSE:**

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████████

62. █████████████████████████████████████████████

███████████████████████████████████████████████

██████

**RESPONSE:**

███████████████████████████████████████████████████

████████████████████

    63.    ███████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

██████

**RESPONSE:**

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

█████████████████████████████

    64.    ███████████████████████████████████

████████████████████████████████████████

**RESPONSE:**

███████████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████

        ████████████████████████████████████████



65. ███████████████████████████████████████████

**RESPONSE:**

66. ███████████████████████████████████████████

**RESPONSE:**

67. ███████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

███████████████████████████████

**RESPONSE:**

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

███████████████████████████████████████

████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
██████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████

68.  ███████████████████████████████████

██████████████████████████████████████████

████████████████████████████████

**RESPONSE:**

██████████████████████████████

69.  ███████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████

**RESPONSE:**

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████

70.     Plaintiff alleges that as early as July 2010, Teradata took the position that it and some of its customers were discontinuing use of TVA and *did not perform certain steps recited in the claims of the '521 Patent* and that other customers fell within the Limited Field of Use and did not believe its customer were directly infringing any of the asserted claims. (*See* Dkt. 41, SAC ¶ 58) (emphasis added).

**RESPONSE:**

Berkeley admits that the contents and allegations contained within the SAC at ¶ 58 were asserted by Berkeley based on the knowledge it had at that date. The remainder of Defendant's conclusions and any inferences it attempts to draw from those conclusions are objected to and denied by Berkeley.

71.     According to Ms. Miracle, Teradata's alleged statement in July 2010 ██████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████

**RESPONSE:**

████████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████

72.    ███████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████

**RESPONSE:**

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████

73.    ███████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████

**RESPONSE:**

████████████████████████████████████████████

74. ██████████████████████████████████████████████████

**RESPONSE:**

75. ██████████████████████████████████████████████████

██████████████████████████████████████████████████

**RESPONSE:**

Berkeley objects to paragraph seventy-five as patently incorrect and because it misconstrues the testimony of Ms. Miracle. [*See e.g.*, Miracle Rep. at Pp. 46, 48-50, 57-59, 78, 121-126, 137-139, 148, 157, 195-200, 211-213, 223-225].

76.      Plaintiff is not entitled to damages arising from acts of infringement that occurred before October 16, 2011 (six years before Plaintiff filed its original complaint in this action) and August 16, 2021 (when the last of the Asserted Patents expired).  (Dkt. 327 (Pl.'s Mot. to Vacate Order to Sever and Stay) at 4 ("Again, ***Berkeley's damages period began six years prior to filing***

*the Complaint on October 16, 2011 [sic] and ended when the last Asserted Patent expired on August 16, 2021.*" (emphasis in original);

**RESPONSE:**

Upon current information and belief, Berkeley admits that the "damages period" of this instant litigation is limited to acts of infringement that occurred between October 16, 2011, and August 16, 2021. Berkeley reserves all rights to seek any additional damages should facts or circumstances warrant.

77.     Plaintiff has not shown any evidence to suggest that *Teradata* sold the accused TVA software to any new U.S. customer after October 2011 or performed any act for existing U.S. customers that would constitute inducement.

**RESPONSE:**

Berkeley denies the allegations of paragraph seventy-seven. *See e.g.*, SAC at ¶ 62-69, SAC at Ex. F.

78.     Plaintiff's infringement claim against Teradata is limited to contending that Teradata has indirectly infringed the Asserted Claims "[i]n violation of 35 U.S.C. § 271(b)" by inducing direct infringement by a third party, specifically the Teradata customer defendants.  (Dkt. 41 (Second Amended Complaint "SAC") ¶ 232).

**RESPONSE:**

Berkeley admits that it made the statements contained in the SAC based on the knowledge that was available to it at that time. The remainder of Defendant's conclusions and any inferences it attempts to draw from those conclusions are objected to and denied by Berkeley.

Dated: June 30, 2023

Respectfully submitted,

By: */s/ William Cory Spence*

William Cory Spence
Anthony Wenn
Daniel S. Hess
**SpencePC**
515 N. State St., 14th Floor
Chicago, IL 60654
Telephone: 312.985.0054
william.spence@spencepc.com
anthony.wenn@spencepc.com
daniel.hess@spencepc.com
**ATTORNEYS FOR
PLAINTIFF
BERKELEY*IEOR.**

## CERTIFICATE OF SERVICE

I hereby certify that on June 30, 2023, a copy of the foregoing document was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's CM/ECF system.

*/s/ William Cory Spence*

*Attorney for Plaintiff BERKELEY\*IEOR, Inc.*