**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| BERKELEY*IEOR d/b/a B*IEOR, a Nevada Corporation,<br><br>        Plaintiff,<br><br>    v.<br><br>TERADATA OPERATIONS, INC.,<br><br>        Defendant. | Case No.: 1:17-cv-07472<br><br>Honorable Charles P. Kocoras<br><br>**REDACTED** |

<u>**BERKELEY'S ADDITIONAL STATEMENT OF FACTS**</u>

Plaintiff BERKELEY*IEOR ("Berkeley"), by and through counsel, hereby submits its Additional Statement of Facts in support of its Opposition to Teradata Operations, Inc.'s ("Defendant") Motion for Summary Judgment ("MSJ") as follows:

> **I. BACKGROUND**

1.      The Asserted Patents enjoy a priority date that goes back more than twenty years, each Asserted Patent claiming priority to Provisional application No. 60/128,769, filed on Apr. 9, 1999. *See* the '521 Patent, at 1:8-9, the '137 Patent at 1:8-9 and the '316 Patent at 1:11-13. (*Attached hereto* as Exs. A-C, respectively).

2.      Claim 1 of the '521 Patent requires each of the following steps: "providing a relational database management system operable in association with a computer; preparing information to be accessed electronically through the relational database management system; establishing, in the relational database, rules for processing the prepared information; using the relational database management system to independently calculate at least one marginal value of profit for each object being measured using the established rules as applied to a selected set of

prepared information; using the relational database management system to calculate a fully absorbed profit adjustment value for each object being measured; and combining the at least one marginal value of profit and the fully absorbed profit adjustment value to create a measure for object level profitability." (The '521 Patent at 30:55-31:3).

3.     According to the '521 Patent specification "[m]any businesses today are struggling to accurately measure profit contribution at a level necessary to accurately measure profit contribution of individual customer interactions.'"521 Patent, at 1:36-39.

4.     According to the '521 Patent specification, "[p]rior approaches to management's desire for an accurate measure of individual decisions (incremental or marginal) profit impact have been solved by automating the accounting process for implementing accounting methods." *Id*. at 3:39-42.

5.     The '521 Patent specification states that "[t]o gain this new level of profit resolution this invention is designed to use micro profit measurement rules applied at a granular level consistent with standard accounting practice using a combination of actuarial science and mathematical set theory. The invention is designed to utilize massively parallel computing operations using relational database management techniques enabling profit measurement at a level not available today in a large individual customer scale business. This invention does this through a consistent application of measures to a class of business entities which represent the smallest common component of profit measurement desired—the Profit Object." *Id*. at 3:63-4:7. *See also, Id*. at 4:8-30:51.

6.     The prosecution history of U.S. Patent Appl. No. 09/545,628 is *attached hereto* as Exhibit D, and states "[d]ue to the scale and complexity of the analysis, I have implemented the invention within a relational database, which has not been done before and allows the information

to be analyzed in hours instead of days for a major Bank using parallel calculation processes." (Ex. D, Pg. 413).

7.     On November 12, 2018, Teradata Operations, Inc. ("Defendant"), initiated six Covered Business Method ("CBM") reviews of the Asserted Patents before the Patent Trial & Appeal Board ("PTAB"). All six CBMs were denied. [Dkt. 92].

8.     In denying institution under the "technological invention" prong of 37 C.F.R. § 42.301(b)[1], the PTAB held that the Asserted Patents "solve a technical problem using a technical solution" and that "the prosecution history of the '521 patent, provides support for Patent Owner's contentions that the above-noted claim recitations describe a distinctive software-based process that harnesses benefits to computer performance. A process that improves computer efficiency and permits desirably faster calculation performance suggests a technical solution to a technical problem." *See* [Dkt. 92-1 to 92-5]; *see also Teradata Operations, Inc. at al. v. Berkeley\*IEOR*, CBM2019-00015, p. 16 (*attached hereto* as Ex. E).

9.     On March 26, 2018, Berkeley filed its five-count Second Amended Complaint, alleging claims for direct infringement of the Asserted Patents against the non-Teradata Defendants in Counts I-IV, and a claim for indirect infringement of the Asserted Patents by Teradata in Count V. *See* [Dkt. 41]. On August 29, 2019, Defendant Teradata moved to dismiss Count V under Federal Rule of Civil Procedure 12(b)(6), alleging that the Asserted Patents were ineligible under Section 101. *See* [Dkt. 105].

10.     This Court denied Defendant's Motion to Dismiss, finding that the asserted patents sufficiently allege that the claimed unconventional combination improves the functioning and

---

[1] 37 C.F.R. § 42.301 prohibits Covered Business Method review of patents that "solve a technical problem using a technical solution." *See* 37 C.F.R. § 42.301.

operation of the computer itself by performing parallel computations in a faster amount of time, finding that "Berkeley sufficiently alleges an inventive concept...". *See* [Dkt. 119 at 15].

11.     Specifically, this Court found that "the limitations within the Asserted Patents and the SAC sufficiently claim a particularized and unconventional use of RDBMS capabilities, not the mere presence of an RDBMS. Each claim limitation operates together to achieve a specific profitability calculator that takes advantage of RDBMS capabilities, parallel processing, and the rules and data to achieve a solution capable of processing more object-level profitability calculations than its predecessors in the same amount of time." [Dkt. 119 at 15]

## II.     CLAIM CONSTRUCTION RULING

12.     In its Claim Construction ruling the Court adopted Berkeley's construction for Term two requiring the calculations to be performed independently, stating "We therefore adopt Berkeley's proposed construction of "running in the relational database management system the corresponding formulas for 'at least one marginal value of profit,' where one calculation does not depend on the other." [Dkt. 279 at 8].

13.     In its Claim Construction ruling the Court established that performing the calculations independently enables simultaneous or parallel calculations, finding that **"**[t]he claims intentionally provide direction to perform the independent calculations simultaneously, sequentially, or if necessary, not perform some of them at all…" [Dkt. 279 at 8].

## III.     BERKELEY'S MOTION FOR SUMMARY JUDGMENT

14.     Berkeley filed a motion for summary judgment on July 26, 2022 asking this Court to find the Asserted Claims valid under 35 U.S.C §101. [Dkt. 295].

15.     Defendant filed its Response to Berkeley's motion for summary judgment on September 1, 2022, which contained eighteen pages of arguments. [Dkt. 308 at 22.].

## IV.     DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

16.     Defendant filed a Motion for Summary Judgment ("MSJ") on March 3, 2023 requesting that the Court find the Asserted Patents were invalid under 35 U.S.C. § 101 and that Berkeley failed to show infringement of the Asserted Claims. [Dkt. 353].

17.     Defendant's MSJ states that "there are no genuinely disputed issues of material fact regarding the patent ineligibility of the asserted claims under 35 U.S.C. § 101." [Dkt. 353 at 15].

18.     Defendant's MSJ further states:

> All of the asserted claims are method claims, so Plaintiff's inducement claim has always required Plaintiff to prove that some direct infringer (i.e., one of Teradata's customers) actually performs each step of the claimed methods. Instead, almost six years into the case, Plaintiff concedes it cannot show that. [ Dkt. 353 at 2]; and

> Plaintiff conceded that it 'could not fairly make its case' for infringement of the Asserted Patents. (Dkt. 327 at 2). [Dkt. 353 at 9].

## V.     BERKELEY'S EXPERT REPORT AND TESTIMONY

19.     Mr. Scarbrough's expert report on patentability states:

> That is why Mr. Lepman arranged his method to have four profitability values: (1) net interest ("NI"); (2) other revenue ("OR"); (3) direct expense ("DE"); and (4) provisioning ("P") – calculated "independently" of each other. This made it possible for the RDBMS to process multiple profit value calculations simultaneously and in parallel – rather than dependently, where calculations depending on prior calculations had to execute in sequence. Ex. 3, 11:37-40, claim 1 ("using the relational database management system to independently calculate") (emphasis added). Fig. 5 provides one example, illustrating that at least NI, OR, DE and P are calculated "independently" of each other (thereby taking advantage of parallel processing):

5



(Ex. F, Dec. of Jon Scarbrough, ¶ 57).

20.



█████████████████████████████████████

████████████████

21.   ████████████████████████████   ██████████████



████████████████

22.   ████████████████████████████████████

████████████████

23.   ████████████████████████████████



24.

25.



26.

VI.

27.



28.

## VII.   BERKELEY LETTER TO TERADATA

29.     On September 29, 2009, counsel for Berkeley wrote a letter to Defendant, stating:

On behalf of my clients, Berkeley*IEOR and Nevada*IEOR, I am pleased to announce the issuance of U.S. Patent No. 7,596,521 entitled PROCESS FOR DETERMINING OBJECT LEVEL PROFITABILITY. The inventor is Richard Tad Lepman. Berkeley*IEOR holds the rights to the patent. Enclosed please find a copy of the first page of the patent, the full text of which is available for review on the USPTO website.

Obviously we should talk concerning the impact of this issuance on, among other things, the License Agreement dated June 1, 1999 by and between Berkeley *IEOR and NCR Corporation ("NCR")', the sales of Value Analyzer by NCR over the last several years that were not within the field of use specified by the License Agreement and sales of Value Analyzer and its progeny by Teradata Corporation, which we believe has no rights under the License Agreement whatsoever.

(Ex. J, Notice Letter, p. 1).

## VIII.   DEFENDANT'S THIRD PARTY MARKETING DOCUMENTS WITHIN THE DAMAGES PERIOD

30.     A marketing document titled "Teradata Helps Grainger Reap the Benefits of High-Volume, Detailed Analytics", published on February 3, 2012, states "Teradata Corporation, (NYSE: TDC), recently partnered with W.W. Grainger, Inc. (Grainger), a global Fortune 500 distributor of facilities maintenance products, to implement new analytics capabilities utilizing

Teradata's Active Enterprise Data Warehouse (EDW) platform and Teradata Value Analyzer software." (Ex. K, p. 1).

31.     A marketing document titled "WW Grainger: The Supply & Demand of Advanced Profitability Insights" published in 2015, states "Grainger also leverages profitability analytics to support brand/segment profitability reporting and value-based contracting/customer profitability" … which "saw ROI within four months and helped identify $80M in revenue for additional lift." (Ex. L, p.2).

**IX.**





39. ████████████████████████

XII. ████████████████████████████

40. ████████████████████████████████



████████████████████

Dated:  June 30, 2023

Respectfully submitted,

By: */s/ William Cory Spence*
William Cory Spence
Anthony Wenn
Daniel S. Hess
**SpencePC**
515 N. State St., 14th Floor
Chicago, IL 60654
william.spence@spencepc.com
anthony.wenn@spencepc.com
daniel.hess@spencepc.com

**ATTORNEYS FOR PLAINTIFF
BERKELEY*IEOR.**

## CERTIFICATE OF SERVICE

I hereby certify that on June 30, 2023, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing via electronic mail to all counsel of record.

*/s/William Cory Spence*