IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BERKELEY*IEOR d/b/a B*IEOR, a Nevada Corporation,<br><br>               Plaintiff,<br><br>   v.<br><br>TERADATA OPERATIONS, INC.,<br><br>               Defendant. | Case No. 17-cv-07472<br><br>Judge Charles P. Kocoras<br>Magistrate Judge Jefferey Cole |

**DEFENDANT TERADATA'S REPLY IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT**

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................................ 1

ARGUMENT .................................................................................................................................. 3

I.    THE ASSERTED CLAIMS ARE INVALID UNDER 35 U.S.C. § 101 BECAUSE THEY COVER NOT PATENT INELIGIBLE SUBJECT MATTER ............................................................................................................................ 3

    A.    Neither Plaintiff's Premature Motion for Summary Judgment Nor the PTAB's Prior Decision Bar Teradata's Cross-Motion for Summary Judgment ................................................................................... 3

    B.    It is Law of the Case that the Asserted Claims Are Directed to an Abstract Idea and, Therefore, Fail Step 1 of the *Alice* Inquiry ............................... 5

    C.    There Is Now No Genuine Issue of Material Fact that the Asserted Claims Lack an Inventive Concept and, Therefore, Also Fail to Satisfy *Alice* Step Two ........................................................................................ 6

II.    PLAINTIFF's OPPOSITION CONFIRMS THERE IS NO REASON TO SEND THE ISSUE OF INDUCED INFRINGEMENT TO THE JURY ........................... 8

    A.    Plaintiff Cannot Meet Its Burden Of Demonstrating Direct Infringement ................................................................................................... 9

    B.    Plaintiff Cannot Meet Its Burden Of Demonstrating Inducement By Teradata ................................................................................................... 11

    C.    Plaintiff Has Not Proven Any Allegedly Infringing Use Occurred During the Period Where Damages Would Be Available ................................. 13

III.    CONCLUSION .................................................................................................... 14

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Aatrix Software, Inc. v. Green Shades Software, Inc.*,
  882 F.3d 1121 (Fed. Cir. 2018)..................................................................................................7

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
  573 U.S. 208 (2014).......................................................................................................1, 2, 5, 6

*Allen v. Benton*,
  No. 18-CV-4047, 2022 WL 18147674 (N.D. Ill. Feb. 25, 2022) ......................................10, 12

*BSG Tech LLC v. Buyseasons, Inc.*,
  899 F.3d 1281 (Fed. Cir. 2018)..................................................................................................8

*CardioNet, LLC v. InfoBionic, Inc*,
  955 F.3d 1358 (Fed. Cir. 2020)..................................................................................................5

*Cascades Streaming Techs., LLC v. Big Ten Network, LLC*,
  No. 13 C 1455, 2016 WL 3612108 (N.D. Ill. July 6, 2016), aff'd, 748 F. App'x
  338 (Fed. Cir. 2019)...................................................................................................................5

*Credit Acceptance Corp. V. Westlake Svcs.*,
  859 F.3d 1044 (Fed. Cir. 2017)..................................................................................................4

*DSU Med. Corp. v. JMS Co., LTD.*,
  471 F.3d 1293 (Fed. Cir. 2006)..................................................................................................9

*Est. of Stoller v. Ford Motor Co.*,
  784 F. Supp. 506 (N.D. Ill. 1992) ..............................................................................................5

*Good Shepherd Manor Found. v. City of Momence*,
  323 F.3d 557 (7th Cir. 2003) ..............................................................................................10, 11

*Howmedica Osteonics Corp. v. Tranquil Prospects, Ltd.*,
  482 F. Supp. 2d 1045 (N.D. Ind. 2007), aff'd, 260 F. App'x 297 (Fed. Cir.
  2008) ..................................................................................................................................10, 11

*Joy Techs., Inc. v. Flakt, Inc.*,
  6 F.3d 770 (Fed. Cir. 1993)......................................................................................................13

*JP Morgan Chase Bank, N.A. v. Jenkins*,
  No. 14 C 4278, 2016 WL 4417072 (N.D. Ill. Aug. 18, 2016), *aff'd sub nom.*
  *J.P. Morgan Chase Bank, N.A. v. Jenkins*, 771 F. App'x 673 (7th Cir. 2019)...................10, 12

*McCloud v. Goodyear Dunlop Tires N. Am., Ltd.*,
 No. 04-CV-1118, 2008 WL 2323792 (C.D. Ill. June 2, 2008) .................................................6

*Ploss v. Kraft Foods Grp., Inc.*,
 No. 15-CV-02937, 2022 WL 16540179 (N.D. Ill. Oct. 28, 2022) .........................................12

*Scott v. Bender*,
 948 F. Supp. 2d 859 (N.D. Ill. 2013) .....................................................................................6

*TecSec, Inc. v. Adobe Inc.*,
 978 F. 3d 1278 (Fed. Cir. 2020) ............................................................................................9

*Telemac Cellular Corp. v. Topp Telecom. Inc.*,
 247 F.3d 1316 (Fed. Cir. 2001) .............................................................................................9

*United States v. Benson*,
 941 F.2d 598 (7th Cir. 1991) ...............................................................................................12

*United States v. Schultz*,
 2016 WL 7409911 (N.D. Ill. Dec. 22, 2016) .......................................................................12

*Wheeler v. Lawson*,
 539 F.3d 629 (7th Cir. 2008) ...............................................................................................13

*Yousif v. Illinois Dep't of Juv. Just.*,
 No. 21-CV-1302, 2022 WL 10537154 (N.D. Ill. Oct. 18, 2022) ...........................................6

**Statutes**

35 U.S.C. § 101.................................................................................................................3, 4, 5

35 U.S.C. § 325(e)(1).............................................................................................................4

**Other Authorities**

Fed. R. Civ. P. 12(b)(6) ........................................................................................................4, 7

iii

## INTRODUCTION

Plaintiff B*IEOR's Opposition (Dkt. 369, "Opp.") confirms there are no genuine disputes of material fact that: (1) the asserted claims are directed to patent-ineligible subject matter and are, therefore, invalid; (2) B*IEOR has not adduced evidence sufficient to prove multiple required elements of its claim of induced infringement, and, therefore, cannot prove infringement in this litigation; and (3) B*IEOR cannot demonstrate any allegedly infringing activity after October 16, 2011, the statutory deadline for collecting damages, and, therefore, there are no damages available in this case.

Throughout its Opposition, Plaintiff conspicuously avoids addressing the record evidence, such as its own admissions regarding claim scope, as well as the clear and unequivocal admissions of its own expert, all of which Teradata relies on in its opening motion (Dkt. 351, "Mot."). Instead, B*IEOR advances flawed procedural arguments, such as its erroneous contention that Teradata should not be allowed to file its own motion for summary judgment on the issue of patent eligibility because B*IEOR already has its own motion pending. This argument finds no basis in any Federal or Local Rules, let alone the case law, and should be rejected. B*IEOR also impermissibly attempts to relitigate the Court's long-standing finding that the Asserted Claims are directed to an abstract idea and, therefore, fail *Alice* Step One. But the time for seeking reconsideration of that properly decided finding has long passed, and it is now law of the case that cannot be challenged on summary judgment. On the issue of patent eligibility, B*IEOR also fails to acknowledge the differing standards of review between a motion to dismiss, in which it had the benefit of having its factual allegations in its pleadings taken at face value, and the present summary judgment stage, where it has failed to back up any of those allegations with sufficient and admissible evidence. Plaintiff's attempts to muddy the waters through vague procedural gamesmanship miss the mark.

1

On the merits, Plaintiff fails to dispute the bulk of Teradata's arguments regarding *Alice* Step Two. And even where Plaintiff attempts a rebuttal, it cannot get around the fact that, to satisfy Step Two of the *Alice* inquiry, B*IEOR's experts rely on their view that the invention entails parallel or simultaneous calculations to capture an inventive step. But B*IEOR's Opposition also further confirms that parallel or simultaneous calculations were never a requirement of the claims, and, therefore, are not a feature that could provide the required inventive step to bring the invention out of the realm of unpatentable abstract ideas.

Regarding infringement, B*IEOR all but concedes it has no rebuttal to its own expert's clear and unequivocal admissions that neither she nor Plaintiff has any evidence demonstrating infringement. For example, B*IEOR does not dispute—because it cannot—its expert's admissions that (1) mere use and sale of the Teradata Value Analyzer product ("TVA") does not infringe the Asserted Patents; and (2) whether a Teradata customer uses TVA in an infringing manner is wholly dependent on the specifics of how a customer uses it. And having adduced no evidence showing *how* any customer uses the TVA product, B*IEOR nevertheless stakes its entire infringement case on nothing more than alleging general use and sale of TVA as a whole, while never proving that any customer performed every step of the claimed methods. As a matter of law, this is legally insufficient to prove infringement. Even worse, the only so-called "evidence" B*IEOR relies on to oppose Teradata's motion consists exclusively of excerpts from its expert's unsworn report, inadmissible hearsay that cannot be considered evidence to oppose summary judgment.

As to its claim for damages, B*IEOR does not dispute that the only instance of allegedly infringing conduct its expert has identified occurred before October 16, 2011, the statutory deadline for collecting damages. In response, Plaintiff attempts the same semantic sleight of hand it used in trying to salvage its doomed infringement case by impermissibly equating "using TVA"

2

with performing the specifically claimed methods. *See* Opp. at 14-15. For the same reasons, B*IEOR's argument on damages also fails.

## ARGUMENT

### I. THE ASSERTED CLAIMS ARE INVALID UNDER 35 U.S.C. § 101 BECAUSE THEY COVER NOT PATENT INELIGIBLE SUBJECT MATTER

#### A. Neither Plaintiff's Premature Motion for Summary Judgment Nor the PTAB's Prior Decision Bar Teradata's Cross-Motion for Summary Judgment

Teradata seeks summary judgment on the issue of invalidity because the asserted claims do not constitute patent-eligible subject matter under 35 U.S.C. § 101. Plaintiff begins its Opposition (Dkt. 369) by arguing that Teradata is somehow procedurally barred from seeking summary judgment on this topic and that any briefing from Teradata on this issue should be relegated to a sur-reply to Plaintiff's own previously filed motion for summary judgment on the same issue (Dkt. 294). Plaintiff's procedural argument ignores the key burdens and differences in a motion for summary judgment and an opposition. Moreover, Plaintiff's argument has no basis in any rule or case law—Plaintiff fails to cite any such authority. That is because it cannot, as no procedural or substantive argument precludes Teradata from seeking invalidity through summary judgment. Rather, now that expert discovery has concluded with Plaintiff failing to put forward evidence to support its claims, this stage of litigation is the proper juncture for Teradata's motion. Plaintiff's position underscores there is no genuine issue of material fact as to the invalidity of the asserted claims under Section 101.

Plaintiff's procedural argument turns the notion of summary judgment on its head. Cross-motions for summary judgment are not only common practice, they also often assist the Court in determining whether there is, in fact, any actual disputed material fact precluding a determination on the merits. That is precisely the case here. Teradata's motion for summary judgment was timely

filed according to the schedule in this case.[1] *See* Dkt. 125 at 2. B*IEOR's choice to prematurely file its own summary judgment motion without waiting for a complete evidentiary record did not obligate Teradata to file a similarly premature cross-motion at that time. B*IEOR's suggestion is wholly unsupported, and the Court should reject it outright.

B*IEOR's repeated, erroneous contention that the PTAB resolved the issue of patent eligibility *on the merits* should fare no better. *See, e.g.*, Opp. at 2. On this point, B*IEOR misstates the record. As Teradata previously pointed out—and B*IEOR has not refuted—the PTAB only issued Preliminary Decisions on whether to institute a covered business method review. *Id*. In other words, the PTAB did not even begin substantive review of the patentability issue because it found that the asserted patents are not subject to "covered business method review."[2] Those Preliminary Decisions are not "final decisions" and have no estoppel effect on the merits of this Court's determination of patent-eligible subject matter.[3] *See Credit Acceptance Corp. V. Westlake Svcs.*, 859 F.3d 1044, 1053 (Fed. Cir. 2017) (holding that under 35 U.S.C. § 325(e)(1), estoppel did not attach to "claims upon which the Board declined to institute [covered business method]

---

[1] B*IEOR also misrepresents the history of briefing on the Section 101 issue in this litigation when it states, "Defendant moved for summary judgment on August 29, 2019" in requesting that "this Court should strike/ignore all arguments from Defendant's MSJ that pertain to patent eligibility as untimely." Opp. at 5. This is false. As this Court is aware, Teradata has not previously moved for summary judgment on the issue of patent eligibility. Rather, Teradata's August 29, 2019, motion sought dismissal under Fed. R. Civ. P. 12(b)(6), under an entirely different standard of review. *See* Dkt. 104.

[2] While no longer available, Covered Business Method (CBM) review applied to patents that claimed a method, apparatus, or operation used in the practice, administration, or management of a financial product or service. The PTAB merely found that the asserted patents did not meet these criteria and, therefore, were not subject to this process. (CBM2019-00015, paper 10 at 2 ("Upon consideration of the Petition and Preliminary Response, we determine that Petitioner has not demonstrated sufficiently that the '521 patent is eligible for CBM patent review. Accordingly, we do not institute a CBM patent review of the '521 patent."), 16 ("Because we have determined that Petitioner has not established that the '521 patent is eligible for CBM review, we need not address the merits of Petitioner's patentability challenges to these claims presented in the Petition.")).

[3] Plaintiff's argument is all the more puzzling in light of *Plaintiff's* motion for summary judgment on Section 101 (Dkt. 294). If this issue had been settled on the merits by the PTAB in 2019, Plaintiff's motion in 2022 would be pointless.

4

review"). Therefore, the PTAB's Preliminary Decisions have no bearing on Teradata's present motion.

> **B. It is Law of the Case that the Asserted Claims Are Directed to an Abstract Idea and, Therefore, Fail Step 1 of the *Alice* Inquiry**

As Teradata set forth in its motion, the *Alice* test for patentability under 35 U.S.C. §101 has two steps. *See Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 216-217 (2014). First, the Court must determine whether the claims at issue are directed to an abstract idea. *Id*. To that end, this Court already determined in its Order of March 19, 2020 that "the claims of the Asserted Patents are directed to an abstract idea." Dkt. 119 at 12; *see id*. at 11 ("The Court finds that the claims here are ineligible because their innovation is in an ineligible subject matter. The claims do no more than prepare, organize, and apply mathematical calculations to existing information. No matter how much of an advance in the business field the claims recite, the advance lies entirely in the realm of abstract ideas."). Plaintiff did not move for reconsideration of the Court's determination that the claims are directed to an abstract idea, and the Court's Order has been the law of the case for over three years. *See Est. of Stoller v. Ford Motor Co.*, 784 F. Supp. 506, 511 (N.D. Ill. 1992); *Cascades Streaming Techs., LLC v. Big Ten Network, LLC*, No. 13 C 1455, 2016 WL 3612108, at *2 (N.D. Ill. July 6, 2016), aff'd, 748 F. App'x 338 (Fed. Cir. 2019). Importantly, even at the motion to dismiss stage, "Alice step one presents a legal question that can be answered based on the intrinsic evidence." *CardioNet, LLC v. InfoBionic, Inc*, 955 F.3d 1358, 1372 (Fed. Cir. 2020). Here, the Court's inquiry as to *Alice* Step One was decided on the merits and cannot be reopened on summary judgment. Plaintiff improperly attempts to re-litigate this finding, and this Court should reject Plaintiff's arguments concerning *Alice* Step One.

Even if the Court were to allow B*IEOR to relitigate this issue, B*IEOR has not met the rigid standard for reconsideration; it points to no newly discovered evidence or any intervening

5

and substantial change in law. *Accord. Scott v. Bender*, 948 F. Supp. 2d 859, 865 (N.D. Ill. 2013). Additionally, by simply ignoring this Court's finding and seeking a belated do-over in opposing Teradata's motion for summary judgment, Plaintiff has improperly multiplied the proceedings. *See McCloud v. Goodyear Dunlop Tires N. Am., Ltd.*, No. 04-CV-1118, 2008 WL 2323792, at *4 (C.D. Ill. June 2, 2008) (holding that the court will not rehash issues that were previously addressed); *Yousif v. Illinois Dep't of Juv. Just.*, No. 21-CV-1302, 2022 WL 10537154, at *2 (N.D. Ill. Oct. 18, 2022) (ruling that a party cannot "rehash [ ] old arguments…or gain [another] bite at [the] apple to relitigate previously considered and dismissed arguments"). This Court need not disturb its previous determination that the claims of the asserted patents are directed to an abstract idea. Dkt. 119 at 11.

### C. There Is Now No Genuine Issue of Material Fact that the Asserted Claims Lack an Inventive Concept and, Therefore, Also Fail to Satisfy *Alice* Step Two

Once a court determines that the claims at issue are directed to an abstract idea, it must then analyze whether they have an inventive concept under Step Two of *Alice* and its progeny. *See Alice*, 573 U.S. at 217. Teradata explained why no genuine issues of material facts remain as to that step, and the claims fail this test also. Mot. at 5-8. Plaintiff's opposition fails to demonstrate that any issue of fact exists that would preclude a finding of invalidity on summary judgment.

Plaintiff begins by arguing, "[t]he Court already established the Asserted Claims include simultaneous and parallel calculations," and elsewhere asserts that it is these "independent calculations that provide greater speed and efficiency to software and computer applications," ostensibly contending that this limitation provides the inventive step sufficient to find that the claims satisfy *Alice* Step Two. Opp. at 7-8. But the Court "established" no such thing. Once again, Plaintiff plays fast and loose with the motion-to-dismiss standard. Because it was evaluating B*IEOR's findings in the context of Teradata's motion to dismiss, the Court was required to draw

6

all reasonable inferences in favor of B*IEOR, the non-moving party, which is what the Court did. *See* Dkt. 119 at 15 (finding that B*IEOR's Complaint "***sufficiently alleges*** that the claimed unconventional combination improves the functioning and operation of the computer itself by performing parallel computations in a faster amount of time." (emphasis added)).[4] That the Court was required to accept the factual allegations in B*IEOR's pleadings at the motion to dismiss stage does not establish those allegations as fact at the summary judgment stage. Indeed, Plaintiff's argument is particularly untenable in light of the Court's express distinction that it was not making this determination on the merits. As the Court explained:

> Defendant Teradata cites various cases to suggest that the patents in this case lack an inventive concept, but those cases are distinct in that they found a lack of innovative concept ***after*** the 12(b)(6) stage.

*Id.* at 14. We are now "after the 12(b)(6) stage," and the Court is no longer required to accept B*IEOR's pleadings as true. Rather, the Court need only determine whether Teradata has established that there remains no material dispute that the asserted claims lack any inventive concept based on the evidence of record.

B*IEOR's arguments on this issue effectively admit that summary judgment is warranted. For example, Plaintiff contends that the claims create the "possibility for – but not the requirement for – simultaneous calculations." Opp. at 6. In doing so, Plaintiff tacitly admits that the claims cover embodiments where the calculations are not simultaneous. This is far from an inventive concept—it is no more than simply doing math. And even if performing simultaneous calculations

---

[4] Berkeley similarly misstates the Federal Circuit's holding in *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1127 (Fed. Cir. 2018) as finding that "the invention passed Alice Step Two." Opp. at 7-8. As this Court has previously noted, the Federal Circuit merely found that "the complaint sufficiently alleged" facts to survive a motion to dismiss. Dkt. 119 at 15 n.1. Moreover, Berkeley's reliance on *Aatrix* is misplaced. Unlike in *Aatrix*, in which the claims were directed to a "tangible system," the Court here found that "the method claim of 'determining object level profitability' is … not a tangible component." Dkt. 80 at 23.

7

was required by the claims, that is still merely math and moreover, still a stretch as a basis for satisfying Step Two. Performing mathematical operations concurrently using a computing system designed precisely for concurrent operations is no inventive concept. Such concurrent operations are fundamentally indistinguishable from having several humans calculate different aspects of profitability by hand at the same time. At best, the so-called "benefits" of parallel or simultaneous calculations B*IEOR touts are unrelated to the patented invention. These benefits merely sometimes flow from utilizing well-known, conventional components to perform the claimed methods.[5] But as a matter of law, merely pointing out the potential benefits of a claimed system does not constitute an inventive improvement to functionality of that system that would transform an otherwise abstract concept into a patent-eligible invention. *See, e.g.*, *BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1288 (Fed. Cir. 2018) ("benefits . . . are not improvements to database functionality . . ."). "Instead, they are benefits that flow from performing an abstract idea [profitability calculations] in conjunction with a well-known database structure [a relational database]." *Id*. Teradata's motion for summary judgment of patent ineligibility should be granted.

## II. PLAINTIFF'S OPPOSITION CONFIRMS THERE IS NO REASON TO SEND THE ISSUE OF INDUCED INFRINGEMENT TO THE JURY

If the Court were to find any claims to be patent eligible, however, Plaintiff has nevertheless failed to present any evidence to establish multiple factors required to prove infringement. Teradata's motion for summary judgment of non-infringement should be granted.

Teradata seeks summary judgment of non-infringement because Plaintiff has failed to adduce that: ▮▮▮▮ (or any other Teradata customer) has directly infringed the Asserted

---

[5] Berkeley fails to address Teradata's arguments directed at the remaining combination of alleged subparts of claim element 1[d], conceding that RDBMS databases were well-known and used in the art and that applying established rules is the only dispute over the inventive concept centers on its allegations based on independent calculations. *Compare, e.g.*, Mot. at 7-9 *with* Opp. at 7-8.

Claims; (2) Teradata had the requisite knowledge that the allegedly induced acts constituted patent infringement; and (3) any alleged acts of infringement took place within the statutory time period for damages. The absence of any one of these elements, on its own, mandates summary judgment in Teradata's favor. *See See DSU Med. Corp. v. JMS Co., LTD.*, 471 F.3d 1293, 1305 (Fed. Cir. 2006) (a finding of inducement of method claims requires proof of underlying direct infringement by another party); *TecSec, Inc. v. Adobe Inc.*, 978 F. 3d 1278, 1286 (Fed. Cir. 2020) (a finding of induced infringement requires a showing that the accused indirect infringer "took certain affirmative acts to bring about the commission by others of acts of infringement and had knowledge that the induced acts constitute patent infringement"). Plaintiff bears the sole burden of establishing each of these factors, and failure by Plaintiff to establish any of them warrants a finding in favor of Teradata. *See Telemac Cellular Corp. v. Topp Telecom. Inc.*, 247 F.3d 1316, 1323 (Fed. Cir. 2001) ("Summary judgment of noninfringement is appropriate where the patent owner's proof is deficient in meeting an essential part of the legal standard for infringement, since such failure will render all other facts immaterial.").

### A. Plaintiff Cannot Meet Its Burden Of Demonstrating Direct Infringement.

Teradata's position that B*IEOR cannot establish the requisite direct infringement rests on critical admissions by B*IEOR's own expert. *See* Mot. at 11-13. ███████████ This testimony is not challenged.

9

Rather than challenging those admissions, B*IEOR instead points only to *inadmissible* hearsay-within-hearsay in an attempt to manufacture a disputed issue of fact. Ignoring its own expert's dispositive deposition testimony given under oath, and often seeking to contradict it, Plaintiff reverts to taking excerpts from its expert's pre-deposition report out of context to argue that ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉[1] Opp. at 2. It is black letter law that statements from an expert report are inadmissible on summary judgment, because unsworn statements such as expert reports are not evidence. *See, e.g.*, *JP Morgan Chase Bank, N.A. v. Jenkins*, No. 14 C 4278, 2016 WL 4417072, at *2 (N.D. Ill. Aug. 18, 2016), *aff'd sub nom. J.P. Morgan Chase Bank, N.A. v. Jenkins*, 771 F. App'x 673 (7th Cir. 2019); *Allen v. Benton*, No. 18-CV-4047, 2022 WL 18147674, at *4 (N.D. Ill. Feb. 25, 2022) (finding that the expert report is an out-of-court statement that when offered for the truth constitutes hearsay). Plaintiff also ignores that the admissions of Ms. Miracle relied on by Teradata are all from testimony that was secured *after* she submitted her expert report. Even if considered on the merits, the hearsay-within-hearsay in the expert report is still insufficient to create a genuine issue of fact. None of the quotations or slides relied upon by Plaintiff (*see* Opp. at 10-12) are, in any way, attributable to an actual customer, let alone ▉▉▉▉▉▉▉ To the contrary, and critically, B*IEOR merely points to Ms. Miracle's recitations of aspirational documents on the possible functions of the system, and her unsupported speculation as to how ▉▉▉▉▉▉ system work. *See, e.g.*, *Howmedica Osteonics Corp. v. Tranquil Prospects, Ltd.*, 482 F. Supp. 2d 1045, 1061 (N.D. Ind. 2007), aff'd, 260 F. App'x 297 (Fed. Cir. 2008) (granting summary judgment of noninfringement and finding patentee's expert's speculative statements were "insufficient to raise

---

[1] ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ Opp. at 9. For the reasons stated herein, that argument has no basis. Furthermore, Plaintiff has not affirmatively moved or filed any cross-motion for summary judgment of infringement.

a genuine issue of material fact for trial because it is simply a conclusory expert statement devoid of facts upon which the conclusions were reached"); *see also Good Shepherd Manor Found. v. City of Momence*, 323 F.3d 557, 564 (7th Cir. 2003) (expert testimony as to legal conclusions that will determine the outcome of the case is inadmissible). When tested during her deposition, she testified that neither she nor Plaintiff has any evidence of how ▇▇▇ (or any other Teradata customer) has actually used TVA. *See id*. at 12-13.

B*IEOR's inadmissible expert report excerpts cannot be considered on summary judgment as a matter of law, and even if considered, still fail on the merits. Indeed, having had the opportunity to marshal its best evidence to oppose Teradata's motion, Plaintiff has come up with nothing but its expert's conclusory speculation, falling far short of demonstrating that any genuine dispute of material fact exists as to whether anyone has actually directly infringed the patent claim—a requisite element of Plaintiff's inducement claim. Because B*IEOR cannot prove this required element of its claim for infringement, this Court should grant Teradata's motion for summary judgment on the issue of no infringement.

**B.       Plaintiff Cannot Meet Its Burden Of Demonstrating Inducement By Teradata**

Plaintiff's also fails to point out any genuine factual dispute as to whether Teradata had the requisite specific intent to induce infringement. Plaintiff does not present any actual direct or circumstantial evidence of knowledge or intent. Rather, it merely bootstraps its conjecture from the general facts that Teradata is a significant and sophisticated company. Again, such unsupported conjecture is insufficient to defeat summary judgment. Crucially, Plaintiff's expert openly admitted ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Opp. at 12-13. As discussed above, this is inadmissible hearsay, and B*IEOR's arguments relying on Ms. Miracle's expert report should once again be rejected outright. *See, e.g.*, *JP Morgan Chase Bank, N.A.*, No. 14 C 4278, 2016 WL 4417072, at *2; *Allen*, No. 18-CV-4047, 2022 WL 18147674, at *4.

But even if considered on the merits, the cited portions of Ms. Miracle's expert report do not create an issue of fact. Rather, the excerpts confirm that Teradata ***did not*** believe its customers were directly infringing. ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

Plaintiff's contention that Teradata ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ also misses the mark. TVA is a generic term for a broad product with many configurations. As Plaintiff's expert admitted, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

---

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ and such proof remains the Plaintiff's burden, but it fails to explain any way how general customer service, providing software patches, or just revenue from a given customer serves as any evidence of Teradata's intent. In any event, Ms. Miracle's opinions on Teradata's intent are inadmissible. Expert testimony must do "more than draw[] inferences from the evidence that [the expert] was no more qualified than the jury to draw." *United States v. Benson*, 941 F.2d 598, 604 (7th Cir. 1991). That includes supposed expert testimony regarding a party's knowledge or intentions. *See Ploss v. Kraft Foods Grp.,* No. 15-CV-02937, 2022 WL 16540179, at *6 (N.D. Ill. Oct. 28, 2022) ("[T]he proponent must persuade the Court that the expert is more qualified than an ordinary juror to draw … inferences about the party's state of mind. Where the expert lacks the requisite qualifications, the expert's testimony will almost always be unhelpful because he or she is in no better position than the jury to assess [the party's] subjective intent."); *United States v. Schultz*, 2016 WL 7409911, at *3 (N.D. Ill. Dec. 22, 2016) ("An expert's assertions about another party's 'intent' are neither helpful nor admissible under Rule 702.").

12

▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ *See* Mot. at 10. B*IEOR's *ipse dixit* citation to general uses of TVA, therefore, cannot satisfy Plaintiff's burden to establish intent to infringe. Plaintiff cannot, as a matter of law, merely point to the TVA software product Teradata sold. *Joy Techs., Inc. v. Flakt, Inc.*, 6 F.3d 770, 773 (Fed. Cir. 1993) ("The law is unequivocal that the sale of equipment to perform a process is not a sale of the process within the meaning of section 271(a)."). "[A] method or process claim is directly infringed only when the process is performed." *Id.* (citing *Standard Havens Products, Inc. v. Gencor Industries, Inc.*, 953 F.2d 1360, 1374 (Fed. Cir. 1991)). Plaintiff's arguments that Teradata engaged in ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ ▬▬▬▬▬ is legally insufficient. *See, e.g.*, *Joy Techs., Inc.*, 6 F.3d at 773. Discovery is closed, and even if B*IEOR had any evidence that the third party customers directly infringed by using Teradata's TVA product in the claimed manner, B*IEOR has no evidence either that Teradata knew those customers were doing so or that Teradata intentionally encouraged them to do so. B*IEOR cannot gin up a genuine factual dispute about Teradata's knowledge or intent from broad advertising statements that say nothing about the claimed methods. *Wheeler v. Lawson*, 539 F.3d 629, 634 (7th Cir. 2008) (affirming the district court's grant of summary judgment).

### C. Plaintiff Has Not Proven Any Allegedly Infringing Use Occurred During the Period Where Damages Would Be Available

Finally, Teradata seeks summary judgment that Plaintiff is not entitled to any damages, because the only acts of infringement it even alleges took place prior to the statutorily permissible period for B*IEOR to seek monetary damages. B*IEOR does not dispute that the only acts of inducement Ms. Miracle could identify all took place prior to October 16, 2011, the statutory deadline for damages. But in an effort to salvage its damages claim, Plaintiff ignores its expert's concession and now appears to argue that its damages claims can be supported by the

13

(hypothetical) ███████████████████████████ by third-party customers. As an initial matter, B*IEOR has offered no evidence that such "ongoing" acts of infringement occurred, as laid out in Section II.A. above regarding B*IEOR's failure to present evidence of direct infringement. But even if B*IEOR could show that others continued to commit ongoing acts of infringement within the statutory window, it is undisputed that B*IEOR has failed to show, or even allege, that Teradata has committed acts of infringement within that window. As a matter of law, B*IEOR cannot pursue a claim for damages against Teradata, because it is beyond dispute that Teradata did not commit any act of infringement less than six years before B*IEOR filed its complaint.

B*IEOR's cases cited for the proposition that damages are a question of fact are inapposite where there are no available damages to calculate, rendering this issue ripe for adjudication on summary judgment. Here too, B*IEOR has failed to introduce any evidence that would create a genuine dispute of material fact as to any specific act that, even if ultimately found infringing, occurred within the six-year statutory period so as to give rise to B*IEOR's permissible damages claim.

### III. CONCLUSION

For all the reasons stated above, as well as those in Teradata's opening brief in support of its motion for summary judgment, Teradata respectfully requests that the Court grant granting summary judgment.

14

Dated: July 21, 2023                              Respectfully Submitted,

**BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP**

*/s/ Kal K. Shah*
Kal K. Shah
Simeon G. Papacostas
Theresa Starck
71 South Wacker Drive, Suite 1600
Chicago, IL 60606
Telephone: 312.212.4949
Facsimile: 312.767.9192
kshah@beneschlaw.com
spapacostas@beneschlaw.com
tstarck@beneschlaw.com

Charanjit Brahma (admitted *pro hac vice*)
100 Pine Street, Suite 3100
San Francisco, CA 94111
Telephone: 628.600.2250
Facsimile: 628.221.5828
cbrahma@beneschlaw.com

*Attorneys for Defendant Teradata Operations, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on July 21, 2023, a copy of the foregoing document was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's CM/ECF system.

*/s/ Kal K. Shah*
Kal K. Shah
*Attorney for Defendant Teradata Operations, Inc.*